IRAIDA FELICIANO *v.* JUAN FELICIANO
(12933)

O'CONNELL, FOTI and LAVERY, Js.

Argued December 5, 1994—decision released May 16, 1995

*Rochelle Homelson,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Donald M. Longley,* assistant attorney general, for the appellant (state).

*Margaret P. Levy,* for the appellee (defendant).

O'CONNELL, J. The parties' marriage was dissolved on January 6, 1983. Because financial assistance was being furnished on behalf of a minor child under the aid to families with dependent children program (AFDC), the attorney general (hereafter state) was a party to the proceedings. General Statutes § 46b-55.[1] Custody of the child was awarded to the plaintiff, with reasonable rights of visitation for the defendant. The defendant was ordered to pay $1 per year alimony, $15 per week child support and $5 per week on an arrearage owed to the state.

On January 14, 1993, the state moved to modify the support order, arguing that the original award substantially deviated from the Connecticut child support guidelines. On the basis of the guidelines, the state cal-

---

[1] General Statutes § 46b-55 (a) provides: "The attorney general shall be and remain a party to any action for dissolution of marriage, legal separation or annulment, and to any proceedings after judgment in such action, if any party to the action, or any child of any party, is receiving or has received aid or care from the state. The attorney general may also be a party to such action for the purpose of establishing, enforcing or modifying an order for support or alimony if any party to the action is receiving support enforcement services pursuant to Title IV-D of the Social Security Act."

culated that the defendant should pay $86 per week child support and $5 per week on a $60 arrearage. Family support magistrate Alan E. Steele granted the state's motion, but ordered the defendant to pay weekly support in the amount of $56.43, which was based on a pro rata share of the family's AFDC benefits. The magistrate acknowledged that the award deviated from the guidelines, but found that any award that exceeded the pro rata share of AFDC would violate the defendant's fifth and fourteenth amendment rights because it would force him to pay support not only for his own child but also for the plaintiff's other two children, for whom he had no financial responsibility.

The trial court, *Santos, J.*, approved the magistrate's orders and entered them as orders of the court without further hearing.

The state appealed and claims that (1) the trial court improperly approved the magistrate's child support modification, which limited the father's obligation to the prorated amount of AFDC benefits paid for the minor child of the parties, (2) the trial court improperly approved the magistrate's determination that the modification requested by the state would violate the defendant's constitutional rights, and (3) the trial court improperly approved the magistrate's child support order, which violated the child's constitutional rights. We reverse the judgment of the trial court.

I

The state first argues that the trial court abused its discretion because its modified support order substantially deviated from the child support guidelines. The state contends that the trial court improperly limited the defendant's obligation to the pro rata amount of AFDC benefits paid for the child of the parties.

The support guidelines create a rebuttable presumption that the amount of support calculated thereunder

is the appropriate amount of support to be ordered by the court. General Statutes § 46b-215b. This presumption can be rebutted only if the trial court finds, on the record, that it would be inequitable or inappropriate to apply the guidelines because of evidence satisfying one of the guidelines deviation criteria. General Statutes §§ 46b-215a and 46b-215b; Connecticut Child Support and Arrearage Guidelines (1994) § 46b-215a-3, p. 12; *Favrow* v. *Vargas*, 222 Conn. 699, 715, 610 A.2d 1267 (1992); *Castro* v. *Castro*, 31 Conn. App. 761, 766, 627 A.2d 452 (1993).

AFDC assistance is not one of the enumerated criteria for deviation from the presumptive support order resulting from application of the guidelines. The exact opposite is true. The guidelines expressly provide that public assistance grants are not to be included in determination of gross income. To allow public assistance benefits paid to the family unit to be a deviation criterion would create "a back door method to consider something the legislature believed should not be considered." *Sanders* v. *Lott*, 428 Pa. Super. 119, 630 A.2d 438 (1993).

The defendant argues that the receipt of AFDC benefits qualifies under the final criterion, "Other equitable factors." We are not persuaded. The guidelines must be read as a whole. Where one part of the guidelines provides that public assistance benefits are not to be considered in establishing gross income, it would be manifestly inconsistent to allow those same benefits to be used as a deviation criterion under the catchall exception of other equitable factors. See *Favrow* v. *Vargas*, supra, 222 Conn. 715. We conclude that deviation from the guidelines solely because of the child's receipt of a prorated share of an AFDC grant is precluded by the guidelines and was an abuse of the trial court's discretion.

## II

The state next claims that the trial court improperly held that requiring the defendant to pay support in accordance with his ability would violate his constitutional right to due process and equal protection. The trial court reasoned that the violation resulted from the application of the defendant's payments to the state as reimbursement for AFDC payments for two children whom the defendant has no duty to support.

We commence our analysis by noting that the genesis of this issue is the federal statutes governing the AFDC program. "The AFDC program is based on a scheme of cooperative federalism. . . . Established by Title IV of the Social Security Act of 1935, 49 Stat. 627, to provide financial assistance to needy dependent children and the parents or relatives who live with and care for them . . . the federal program reimburses each State which chooses to participate with a percentage of the funds it expends. . . . In return, the State must administer its assistance program pursuant to a state plan that conforms to applicable federal statutes and regulations." (Citations omitted; internal quotation marks omitted.) *Bowen* v. *Gilliard*, 483 U.S. 587, 589 n.1, 107 S. Ct. 3008, 97 L. Ed. 2d 485 (1987).

Since 1975, 42 U.S.C. § 602 (a) (26) (A) has required custodial parents, as a condition precedent to receipt of benefits on behalf of the "family filing unit" to assign to the state any right to receive child support payments for any member of the family unit. "As part of its major effort to reduce the federal deficit through the Deficit Reduction Act of 1984, 98 Stat. 494, Congress amended the statute authorizing Federal Aid to Families with Dependent Children (AFDC) to require that a family's eligibility for benefits must take into account, with certain exceptions, the income of all parents, brothers, and

sisters living in the same home." *Bowen* v. *Gilliard*, supra, 483 U.S. 589. Where the family filing unit includes a mother whose children have different fathers, and support is collected by the state from the father of only one of the children, the federal statutes and regulations require that the payment be used to reduce the outstanding reimbursed AFDC balance of the entire family. 42 U.S.C. §§ 602 (a) (8) (A) (vi) and 657 (b) (1); 45 C.F.R. § 302.51. This is the result that the trial court found to be unconstitutional.

This is not a case of first impression. The United States Supreme Court considered the matter in *Bowen* v. *Gilliard*, supra, 483 U.S. 587, and concluded that fifth amendment due process and equal protection principles are not violated by the requirement that a family applying to receive AFDC benefits include within the family unit a child for whom a noncustodial parent is making support payments. *Bowen* recognized that prior to the federal Deficit Reduction Act there was no requirement that all children in the family be included in the AFDC filing unit and that a family might choose to exclude a child who was receiving support payments if the payments would reduce the family's benefit by an amount greater than the amount payable on behalf of the child. Id., 593. *Bowen* quoted from the remarks of the secretary of health, education and welfare made at the passage of the Deficit Reduction Act that " '[t]his change will end the present practice whereby families exclude members with income in order to maximize family benefits, and will ensure that the income of family members who live together and share expenses is recognized and counted as available to the family as a whole.' " Id., 593–94.

"Because the 1984 amendment forced families to include in the filing unit children for whom support payments were being received, the practical effect was that many families' total income was reduced. The bur-

den of the change was mitigated somewhat by a separate amendment providing that the first $50 of child support collected by the State must be remitted to the family and not counted as income for the purpose of determining its benefit level. See 42 U.S.C. §§ 602 (a) (8) (A) (vi), 657 (b) (1) (1982 ed., Supp. III). Thus the net effect of the 1984 amendments . . . would include three changes: (1) the addition of the child receiving support would enlarge the filing unit and entitle a family to a somewhat larger benefit; (2) child support would be treated as family income and would be assigned to the State, thereby reducing the AFDC benefits by that amount; and (3) the reduction would be offset by $50 if that amount was collected from an absent parent. In sum, if the assigned support exceeded $50 plus the difference in the benefit level caused by adding the child or children receiving support, the family would suffer; if less than $50 and the difference in the benefit level was collected as support, it would not." Id., 594.

The Supreme Court also considered whether the effect of the Deficit Reduction Act was within the judicial function. "Under our structure of government . . . it is the function of Congress—not the courts—to determine whether the savings realized, and presumably used for other critical governmental functions, are significant enough to justify the costs to the individuals affected by such reductions. The Fifth Amendment gives the federal courts no power to impose upon [Congress] their views of what constitutes wise economic or social policy, by telling it how to reconcile the demands of . . . needy citizens with the finite resources available to meet those demands. . . . Unless the Legislative Branch's decision's run afoul of some constitutional edict, any inequities created by such decisions must be remedied by the democratic processes. The District Court believed that the amend-

ment at issue did conflict with both the Due Process Clause and the Takings Clause of the Fifth Amendment. We consider these arguments in turn, and reject them." (Citations omitted; internal quotation marks omitted.) Id., 596–97.

The defendant argues that the *Bowen* majority failed to address the impact of the federal statutes and regulations on the noncustodial father. Although the legal challenge in *Bowen* was brought on behalf of indigent children, we are not persuaded that the strong language of the *Bowen* majority would permit a different result even if noncustodial fathers had been parties to the action. Addition of a noncustodial father as a party would not change the position of the *Bowen* court that the economic, social and philosophical problems involved in the public assistance system are not the business of the court and that it is up to the legislative branch to address these issues. See also *Sanders* v. *Lott*, supra, 428 Pa. Super 129.

We are aware that one state Supreme Court has held to the contrary. *Humphrey* v. *Woods*, 583 N.E.2d 133 (Ind. 1991). This case is inapposite, however, because it did not concern constitutional issues. The state of the law involving constitutional issues implicated in construction of the federal requirements and their impact on the application of the child support guidelines is as set forth in *Bowen* v. *Gilliard*, supra, 483 U.S. 587, as followed by *Sanders* v. *Lott*, supra, 428 Pa. Super 119. The trial court incorrectly held that the entry of a child support order in accordance with the guidelines would have violated the defendant's constitutional rights.

## III

Finally, the state contends that the magistrate's order violated the minor child's equal protection rights because it should have ordered support equal to the amount of support that would be paid on behalf of a

child who is not a recipient of public assistance. Because the first two issues require a remand to the trial court, we do not reach this issue.

## IV

As an additional ground of affirmance, the defendant argues that if the state's position is accepted, the defendant will be denied his rights under article first, § 20, of the Connecticut constitution.[2] This claim was not raised at trial. We are not required to consider a claim that was not distinctly raised at trial.[3] The defendant argues that this court should consider it under the principles of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4]

The defendant argues that this court should take judicial notice that fathers are the payers in child support orders for AFDC families more frequently than are mothers. This "fact" is an indispensable foundation for the defendant's argument. The record does not include evidence concerning this essential point.

[2] Conn. const., art. 1, § 20, as amended by Conn. Const. amend. V and XXI, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

[3] Practice Book § 4185 provides in relevant part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court." The defendant does not claim plain error.

[4] Under the *Golding* guidelines, a defendant can assert a constitutional claim, not preserved at trial, only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

The defendant furnishes no authority, nor are we aware of any, that would allow us to take judicial notice of this "fact." We conclude that the defendant's claim fails the first *Golding* prong because the record is not adequate for review.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.