[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
This case originated in a paternity petition alleging the defendant to be the father of the named plaintiff's child. The defendant, who was represented by counsel, contested the claim, and moved for genetic testing. Red cell antigen and human leukocyte antigen (HLA) tests were conducted, resulting in a laboratory report indicating a combined paternity index of 922 to 1, which was computed to yield a 99.89% probability that the defendant was the father of the child. After trial on August 31, 1993, the court, Ginsberg, F.S.M., entered judgment that the defendant was the father of the minor child.
On October 15, 1993, a further hearing was held before the undersigned to determine past due support and set a support order. The court, after review of the defendant's financial affidavit and other evidence, found that the amount of support indicated by the child support guidelines was $133.00 per week. An arrearage was found in the amount of $6,783.00 as of October 15, 1993, and the defendant was ordered to pay an additional $7.00 per week on the arrearage.
The plaintiff has two minor children. The defendant is not the father of the other child. The plaintiff receives public assistance under the AFDC program for both minor children. Her monthly payment is $631.00. The amount of support ordered from the defendant exceeds his child's pro-rata share of the public assistance award. If the entire support order is retained by the state, the defendant will be effectively paying support for another father's child. The child herself could be deprived of the benefit of her support money. In recognition of these concerns, the court stated its intention, based on Pulk v.Ttevomow, 3 S.M.D. 123 (1989), to consider ordering a holding pot to secure the support exceeding the pro-rata share of public assistance for the child[1]. CT Page 5204-NN
subsequent to the conclusion of these hearings and before completion of the decision in this matter, two legal channels developed which ultimately became dispositive of the issues in this case. The case Feliciano v. Feliciano, hereinafter discussed, was heard in the Family Support Magistrate Division and began its path through the appeals process, eventually to be determined by the Connecticut Supreme Court. This court determined that the ultimate result in Feliciano could have significant implications for the present case and sua sponte ordered a stay on further proceedings until a final result was reached in Feliciano.[2] Meanwhile, the Connecticut Department of Social Services proposed and eventually adopted a welfare reform program known as "A Fair Chance", also known as the Family Strength and Pathways Program.
I
The state first argues that the family support magistrate division lacks jurisdiction to order the State to create a holding pot. The State concedes that a family support magistrate has the authority to order a putative father in a paternity case to pay a sum certain as periodic child support and to "order him to pay the amount thereof to the complainant, or, if a town or the state has paid such expense, to the town or the state, as the case may be. . . ." General Statutes § 46b-171. The state interprets this language as providing authority to set a support order but not to allocate the order once set.
The court finds the State's interpretation unpersuasive. The language of the statute itself requires the family support magistrate to make an allocation of the order to the complainant, town, or state as the case may be. This allocation must be determined by the court, not, as suggested by the State, by the Department of Social Services. The child support guidelines mandated by General Statutes § 46b-215b also require allocation of support orders by the Family Support Magistrate. See eg. Conn. State Regs. § 46b-215a-2-(c) (determination of amount of support in split custody situations). §46b-215a-4(b)(4) (allocation of arrearage payments between the custodial parent and the state).
"While the creation of the family support magistrate division was designed to expedite the process of child support collection it certainly was never intended to create a situation where the magistrate serves as a rubber stamp for whatever claims the State CT Page 5204-OO may present. Family support magistrates are not interdepartmental hearing officers for the Department of Human Resources — they are intended to function as impartial, independent members of a division of the superior court in a quasi-judicial manner. [General Statutes §] 46b-231 (d)." State v. Rosolillo, 4 S.M.D. 130, 136 (1990). "[I]t is for the courts, and not for administrative agencies, to expound and apply governing principles of law." Bridgeport Hospital v. Commission on HumanRights Opportunities, 232 Conn. 91, (1995); Nelson v.Commissioner of Social Services, 14 Conn.L.Rptr. 92, 93 (1995).
II
The State claims that even if children in the household have different fathers, federal statutes and regulations followed by the Department of Social Services requires that all child support payments be used to reduce the outstanding unreimbursed AFDC balance for the whole family. This is the so called "family filing unit" rule. 42 U.S.C. § 602(a)(8)(A)(vi); 602(a)(26)(A); 657(b)(1); 45 C.F.R. § 302.51. It should be noted that the federal scheme does not preempt state law. States are not required to participate in the AFDC program. However, those who choose to participate are required to administrate their program in compliance with federal law. Heckler v. Turner,470 U.S. 184, 199, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985); King v.Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968);Gorrie v. Bowen, 809 F.2d 508, 511 (8th Cir. 1987).
Federal cases address the family filing unit rule primarily in the context of the includability of support for a child as family income. The family unit rule, though, has not been uniformly upheld. In a Minnesota case, for example, the state was enjoined from requiring two assistance units to be consolidated into one unit where one unit consisted of plaintiff's grandchildren by a deceased daughter and the other unit were grandchildren by a different daughter. Wilkes v. Steffen,831 F. Sup. 723 (D.Minn. 1993). See also Lewis v. Martin, 397 U.S. 552,90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); King v. Smith, supra;Solomon v. Shapiro, 300 F. Sup. 409 (D.Conn. 1969), affirmed396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969); Phipps v. Iowa Dept. ofHuman Services, 409 N.W.2d 174, 178 (Iowa 1987).
The seminal case regarding includable resources and family unit commenced in 1970 with a North Carolina AFDC recipient named Beaty Mae Gilliard. She sought to exclude one of her children CT Page 5204-PP from her assistance unit because the father of that child was paying child support in an amount which exceeded the increase in AFDC benefits attributable to that child. The State of North Carolina automatically included the child in the family unit, increasing the family's monthly AFDC from $217 to $227, but then reduced the benefit to $184 to offset the child support paid for the one child. The United States District Court agreed with the plaintiff, holding: "The inclusion of support payments belonging to [one child] as a resource available to the entire family works an unlawful appropriation of the funds of both father and son. . . . [42 U.S.C. § 602(a)(7)] as we read it, authorizes state agencies administering the plan to consider resources of a child in determining the need of the child, but does not require or authorize that the resources available only to a child living in the home should be treated as resources available to the family at large." (emphasis in original) (citations omitted)Gilliard v. Craig, 331 F. Sup. 587, 593 (W.D.N.C. 1971), affirmed409 U.S. 807, 93 S.Ct. 39, 34 L.Ed.2d 66 (1972).
In 1984, Congress passed the Deficit Reduction Act (DEFRA). It provisions included, for the first time, a requirement that the AFDC filing unit must include the parents and all dependent minor siblings. 42 U.S.C. § 602(a)(38). North Carolina then adopted regulations to conform with the new requirements. Some members of the successful class of plaintiffs in Gilliard v.Craig, supra, moved to reopen the 1971 decree to obtain further relief, while the state impleaded the United States Secretary of Health and Human Services. The District Court found that the state regulation and the federal law behind it resulted in an unconstitutional taking of the subject children's child support and were also violative of the due process clause Gilliard v.Kirk, 633 F. Sup. 1529, 1551-55, 1564 (W.D.N.C 1986).
This decision was reversed by a divided United States Supreme Court. Bowen v. Gilliard, 483 U.S. 587, 107 S.Ct 3008,97 L.Ed.2d 485 (1987). The Court conceded, as found by the District Court, that "needy families have suffered, and will suffer, as a result of the implementation of the DEFRA amendments to the AFDC program." However, "[s]uch suffering is frequently the tragic by-product of a decision to reduce or to modify benefits to a class of needy recipients." Id., 596. The Court rejected the argument that the family filing unit rule caused an unconstitutional taking or violation of due process, holding that "any diminution the value of the support payments for the child is mitigated by the extra $50 that the family receives. . . ." CT Page 5204-QQ Noting that "[t]he law does not require any custodial parent to apply for AFDC benefits", the Court held that the "decision to include child support as part of the family income certainly does not implicate the type of concerns that the Takings Clause protects." Id., 608. Justice Brennan, in his dissent, responded: "[T]he burden placed on the child is not the result of his or her voluntary application for AFDC benefits. Indeed, participants in this litigation are children who do not wish to receive AFDC. Rather, the child must choose between the father and mother solely because other household members are indigent and desire public assistance. It is the presence of these persons in the household, not the child's voluntary application for public assistance, that triggers the requirement that it choose which parental relationship to maintain. . . . The paradigm of the willing AFDC participant is inapplicable in this case, for the child's fundamental rights are infringed so that other members of the household can receive the assistance that they desire." Id., 624-25.
The question of proper allocation of support where children of different absent parents live in the same household has been addressed on several occasions by Connecticut courts. Most of these cases originated in the Family Support Magistrate Division.
The "holding pot" device was first mentioned in Pulk v.Trevorrow, 3 S.M.D. 123 (1989). In that case, the court,Hutchinson, F.S.M., had ordered the defendant to pay $90.00 per week as support for his child by the plaintiff. The defendant did not dispute the validity of the support order, but claimed that the portion of the award, some $28.38 per week, which exceeded his child's pro rata share of the public assistance grant should be applied to the arrearage. The State argued that the full $90.00 order applied to current support.
It was the State that proposed the "holding pot" as an appropriate depository for the excess over the public assistance pro rata share. "It is the State's contention that establishing a holding pot to be distributed upon termination of assistance is the best way to make funds paid by the defendant for current support available to his child. If the holding pot or excess amount of the current order were distributed directly to the custodian of the child while the family was still on assistance, the result would be a dollar for dollar reduction in the AFDC grant. 42 U.S.C. § 602(a)(17); Luckhard v. Reed, 481 U.S. 368,107 S.Ct. 1807, 95 L.Ed.2d 328 (1987); LaMadrid v. Hegstrom,
CT Page 5204-RR830 F.2d 1524 (9th Cir. 1987). If the excess was simply absorbed by the State against the full family flat grant, it would create the anomalous situation of the defendant providing partial support for some [one] else's child." (emphasis in original) Pulkv. Trevorrow, 3 S.M.D. 123 (1989).
The State argues that the "holding pot" theory was "overturned" by the superior court in Lalumiere v. Devries,
Superior Court, Judicial District of Windham, doc. no. FA91-0040959, November 20, 1991 (Potter, J.). In Lalumiere, the trial court, Buzaid, C.F.S.M., ordered the defendant to pay $112.00 per week for one minor child, pursuant to the child support guidelines. The defendant appealed, claiming that the trial court erred in ordering him to pay the full guidelines amount. The court denied the appeal, affirming the decision of the Chief Family Support Magistrate. In denying the appeal, the court rejected the defendant's reliance on the last sentence of the above quoted paragraph from Pulk characterizing as "anomalous" the result if the full amount of the defendant's support were used to offset the full family AFDC grant, including support for children not the defendant's. The court found the resulting offset of assistance payments consistent with the distribution scheme set forth in 42 U.S.C. § 657(b)(2) and (4). In the very next sentence of his decision, however, Judge Potter alluded to the "broad scheme of distribution for funds collected as child support" and quoting from Pulk, at 132, stating: "The specific procedure to be employed is not mandated by the regulations, but is left to the states, subject only to the broad parameters outlined in the federal statutes and regulations. Kitchens v. Bowen, 825 F.2d 1337, 1340 (9th Cir. 1987)." The immediately preceding sentence in Pulk states: "The manner in which such payment is made is not directed by the regulation, and the State's stated method. i.e. the holding pot is rational and reasonable in that it maximizes benefits for the child in question."
The court finds nothing in Lalumiere that "overrules" Pulk. The State's claim in that regard is based solely on the rejection of a single clause in Pulk relied upon by the defendant in suggesting that the court was compelled to order a "holding pot" or similar "systemic methodology". "Broad parameters" permit the court to enter an order either allocated entirely to reimburse the full family AFDC grant, as in Lalumiere, or to reimburse the specific child's grant, with the balance reserved, as in Pulk.
CT Page 5204-SS
In fact, long before the introduction of the Family Strength and Pathways Program, the State has frequently acquiesced or instigated exceptions to the family unit rule. These cases usually pass without comment, handled routinely through unreported bench decisions. Perez v. Perez, judicial district of New Haven at Meriden, doc. no. 246352; Han v. Davis, judicial district of Middlesex, doc. no. 71769; Michaud v. Riccio,
judicial district of Litchfield, doc. no. 65854; Smith-Garcia v.Garcia, judicial district of Tolland, doc. no. 41777; Gritzbackv. Giusti, judicial district of New Haven at Meriden, doc. no. 243524.
In Bowen v. Heintz, 206 Conn. 636, 539 A.2d 124 (1988) [the Court] addressed the issue of whether or not a child receiving Title II Social Security benefits on account of a deceased father (OASDI) must be included in the "family unit" in determination for eligibility for AFDC benefits. This was the Connecticut Supreme Court's first venture into the family filing unit rule. However, the Court found that it "need wade no further into this esoteric swamp", because, by the time the appeal reached the Supreme Court, the plaintiff was no longer receiving any AFDC benefits, and therefore, the appeal was dismissed for mootness[3]. Id., 642.
Our courts were given another opportunity to examine the family filing unit rule in Feliciano v. Feliciano, 37 Conn. App. 856,658 A.2d 141 (1995), affirmed 236 Conn. 719, A.2d (1996). The case originated in a 1983 dissolution of marriage resulting in a $15.00 per week child support order. In January, 1993, the mother was an AFDC recipient for the child of the marriage, as well as for two other children of which the defendant was not the father. The State moved to modify to increase the support order. The motion was heard in this division. The court, Steele, F.S.M.,
granted the motion, but entered a support order equivalent to the child's pro rata share of the AFDC grant rather than the higher amount presumed under the Child Support Guidelines. The court reasoned that an order which exceeded the child's pro rata share of the AFDC award would violate the defendant father's rights under the fifth and fourteenth amendments of the United States Constitution because it would require him "to pay child support to children for which he has no legal obligation to support."
The decision was submitted to a superior court judge for approval pursuant to General Statutes § 46b-231(m)(4), and the court, Santo, J., approved the order without hearing. The CT Page 5204-TT State moved for reconsideration, which was denied by Judge Santos on December 26, 1993. The State appealed.
In May. 1995, the Appellate Court reversed. Feliciano v.Feliciano, 37 Conn. App. 856, 658 A.2d 141 (1995). The court, citing Sanders v. Lott, 428 Pa. Super. 119, 630 A.2d 438 (1993) and Favrow v. Vargas, 222 Conn. 699, 610 A.2d 1267 (1992), held that AFDC is not an "enumerated criteria for deviation from the presumptive support order resulting from application of the [child support] guidelines." Nor would deviation under "[o]ther equitable factors" be permitted. The court concluded "that deviation from the guidelines solely because of the child's receipt of a prorated share of an AFDC grant is precluded by the guidelines and was an abuse of the trial court's discretion."Feliciano v. Feliciano, supra, 859[4].
The Appellate Court also rejected the claim that the father's constitutional rights would be violated by requiring him to pay support as provided by the guidelines. Noting that the United States Supreme Court in Bowen v. Gilliard, 483 U.S. 587,107 S.Ct. 3008, 97 L.Ed.2d 485 (1987), "concluded thatfifth amendment due process and equal protection principals are not violated by the requirement that a family applying to receive AFDC benefits include within the family unit a child for whom a non-custodial parent is making support payments . . ." the court found the defendant's distinguishing arguments unpersuasive and found Bowen determinitive of federal constitutional issues[5].Feliciano v. Feliciano, supra, 37 Conn. App. 863.
Finally, the court declined to consider the defendant's claims under the Connecticut Constitution, article first, §20 on grounds that it was not distinctly raised at trial. Id., 864; Practice Book § 4185.
The defendant appealed to the Connecticut Supreme Court. The appeal was certified. Feliciano v. Feliciano, 234 Conn. 915,661 A.2d 96 (1995). Recently, in a per curiam decision, the court affirmed the Appellate Court, essentially adopting its opinion.Feliciano v. Feliciano, 236 Conn. 719, A.2d (1996).
The present case is distinguishable from Feliciano in several respects. First, unlike in Feliciano, the court herein did not deviate from the child support guidelines, but in fact ordered the defendant to pay the presumptive amount. Any equal protection argument as to the custodial parent is inapplicable because the CT Page 5204-UU guidelines amount was ordered and if the mother terminates public assistance, she will automatically be entitled to the full support order. Further, this court's concern was less directed to any perceived violation of the father's constitutional rights, but rather to the child's rights to receive the support paid by his father free of intercept or seizure by the State. Although these issues were not specifically addressed by the Appellate Court or the Supreme Court, their wholehearted embrace of Bowen
suggest a probable application of the family filing unit rule in the present case.
III
This court finds, however, that the entire issue has been rendered moot by the other dispositive "legal channels" mentioned at the commencement of this opinion. In late 1994, the Department of Social Services amended its regulations to adopt the Family Strength and Pathways Program, also known as "A Fair Chance". The program, one of the State's "welfare reform" measures, radically altered asset limits, family savings for educational expenses of children, disregard rules, and disposition of child support payments. It replaced the $50 per month federal DEFRA pass through with a new $100 per month disregard. It establishes a child support assurance program. And it permits the caretaker relative to exclude some children from the family filing unit. This program does not conform to the federal AFDC requirements. However, a waiver was granted by President Clinton.
The new program impacts families such as that in the present case in several significant ways. First, the regulations now provide that "all current child support payments that are collected in the month when due" are passed through to the family. "Included in this 100% current support pass-through are amounts that would have been distributed under paragraphs (b)(1), (b)(2) and (b)(3) of 45 C.F.R. § 302.51. That is, the DEFRA disregard, current month assistance reimbursement, and excess support amounts . . . are all paid to Family Strength and Pathways recipients." Connecticut Department of Social Services, Bureau of Child Support Enforcement, Child Support Program, Manual Volume 4, Chapter 408, Administrative Procedures § 408.2(j)(2)(A). The former DEFRA pass through of $50 per month is replaced by a $100 per month disregard — that is the first $100 of support collected each month is passed through to the family without reducing AFDC benefits. Manual Volume 4, supra, § 408.2(j)(3). Lastly, the program provides that "[a] dependent CT Page 5204-VV child whom the caretaker relative chooses not to include in the assistance unit unless such child is a parent of a child in the assistance unit." Connecticut Department of Social Services, Uniform Policy Manual, Welfare Reform, Assistance Unit Composition, § 9820.05 D 2; A.
While pursuing the Feliciano appeal to conclusion in the state Supreme Court, the department itself[6] apparently recognized the shortcomings of the former policy. In announcing the program, the department made the following observation[7]: "Under standard federal rules all children in a household must be included on the AFDC award, even if one or more of the children is being supported by an absent parent paying child support. In this situation, the absent parent's child support payments do not go directly to the family, and do not tangibly help the child." Regarding the new policy, the department states: "This change alters the standard federal rule that requires all children in a household to be on the AFDC award, even if one of those children has income, such as child support, that is sufficient to meet his or her needs. Children who are being supported by an absent parent could continue to receive that support while the siblings receive AFDC. This will encourage absent parents to continue supporting their children and will be an incentive for the AFDC parent to cooperate with the state in pursuing support for absent parents."
In establishing this program, the State has come full circle. Rather than continuing to defend the "family filing unit" rule, it has essentially abandoned it. Although the plaintiff mother must still take the initiative to apply for the exclusion of the subject child from the AFDC unit, the court believes that the new policy restores that decision to where it belongs — to the custodial parent. Since the plaintiff now has a choice which would allow the child to receive the full benefit of his father's support, a "holding pot" or similar allocation is unnecessary. Effective September 1, 1996, any allocation orders in this case are revoked and all stays are vacated. The support order of $133.00 current support and $7.00 per week on the arrearage previously found by the court shall enter as the final order of the court.
Lifshitz, J.