[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes to the court on a motion for support filed by the State pursuant to General Statutes §§ 17b-745 and 46b-215. Parentage of the two children was established through acknowledgments of paternity. Erica Vazquez, born December 25, 1986 was acknowledged by the defendant on November 21, 1990. The plaintiff filed a support petition in early 1991. Both parties filed appearances on January 25, 1991 but the petition was continued without orders entering because the plaintiff was expecting another child. Eric Vazquez, Jr. was born January 30, 1991. The defendant acknowledged Eric on March 6, 1991, which was filed in the court file, together with the mother's affirmation on March 25, 1991. However, no action was taken on the support petition, and the file languished until the present activity came to the court.[1]
A lengthy contested hearing ensued regarding the issues of support and arrearage. At the conclusion of the hearing, the court, noting the extensive period of time with no support paid, issued a temporary support order of $107.00 per week unallocated support for the two minor children plus $8.00 per week on the arrearage to be determined. For the reasons hereinafter stated, the court find no reason to change the order, which is fair, equitable and consistent with the principals found in the support statutes and child support guidelines.
The child support guidelines require the court to first determine the CT Page 5047 presumptive support order prior to applying any deviation criteria. Regs., Conn. State Agencies § 46b-215a-3-(a); Arias v. Macedo, 14 S.M.D. ___, 6 Conn.Ops. 1335, 2000 Ct. Sup. 12916 (2000). According to her financial affidavit, the plaintiff works as a security guard earning $428.80 per week gross, with a net income of $335.66. The defendant filed a financial affidavit at the hearing reporting zero income. He claimed that he is totally disabled due to a work-related injury, pending back surgery. Transcript, 74. He provided no medical evidence to corroborate his claim. He also claims that he has a workers' compensation claim pending in Florida. He was receiving $300 per week from this claim, but payments stopped without explanation. Transcript, 75-76. Based on his present stated zero income, the child support guidelines would produce a presumptive child support order of zero.
The State and the plaintiff challenge the defendant's claimed financial condition. They both demand that the court impose an earning capacity deviation on the defendant. The child support guidelines provide for deviation where the court finds "[o]ther financial resources available to a parent." Regs., Conn. State Agencies § 46b-215a-3 (b) (1) (B). A parent's earning capacity is specifically included in this subsection. "It is well established that a court may consider a party's earning capacity rather than actual income in computing a support order." Johnson v.Johnson, 185 Conn. 573, 576, 441 A.2d 578 (1981); Miller v. Miller,181 Conn. 610, 611-12, 436 A.2d 279 (1980); Siracusa v. Siracusa,30 Conn. App. 560, 566, 621 A.2d 309 (1993); Carey v. Carey,29 Conn. App. 436, 440, 615 A.2d 516 (1992); Hart v. Hart,19 Conn. App. 91, 94, 561 A.2d 151 (1989); Campbell v. Darling, 16 S.M.D. 1, 6 (2002); Fredo v. August, 13 S.M.D. 83, 87, 1999 Ct. Sup. 7998
(1999); Moffit v. Moffit, 12 S.M.D. 41, 42-43 (1998); Danford v.Symonds, 12 S.M.D. 32, 36 (1998); Murray v. Stone, 11 S.M.D. 149, 152 (1997), Brown v. Brown, 11 S.M.D. 140, 147 (1997); Englemann v.Englemann, 10 S.M.D. 90, 147 (1997); Henja v. Brown, 10 S.M.D. 42, 147 (1996); Kimery v. Kimery, 9 S.M.D. 54, 57 (1995); Jodoin v. Jodoin, 9 S.M.D. 7, 8 (1995); Hay v. Hay, 8 S.M.D. 51, 54 (1994); Guidone v.Moschette, 8 S.M.D. 10, 11 (1994); Webster v. Webster, 8 S.M.D. 4, 5 (1994); Campbell v. Scott, 7 S.M.D. 8, 12, 8 CSCR 507, 11 Conn.Fam.L.J. 71 (1993); Bardsley v. Bardsley, 6 S.M.D. 112, 116 (1992); Quellette v.Quellette, 6 S.M.D. 83, 85 (1992).
The defendant is a high school graduate with two years of studies in public relations at Manchester Community College. When Erica was born, he worked at Aetna as a payroll technician. He his salary reached about $19,000 per year. Approximately in 1991, he was terminated from this position. Asked to explain the termination, the defendant stated, in part: "I think it was embezzlement case. . . . Embezzlement. I'm not sure what the reason was, but it had something to do with me not doing my CT Page 5048 job." Transcript, 44. Subsequently, he obtained various jobs from security guard, earning $6.00 to $7.00 per hour to snowplowing, which paid as much as $12.00 per hour. In view of the absence of documentation or corroboration of the defendant's alleged medical disability and the interruption in compensation benefits, the State argues that the foregoing evidence form the basis of an earning capacity deviation.
The defendant claims that he is the father of as many as five other children and that that should be taken into consideration in the setting of the support order in this case. Our guidelines consider the interests of other children of the obligor in three distinct ways: (1) The obligor is entitled to a deduction against his income for a child subject to court-ordered child support to the extent he is paying the order, Regs., Conn. State Agencies § 46b-215a-1 (1) (F); (2) He is entitled to a "qualified child deduction" for a dependent child living in his home,[2]
Regs., Conn. State Agencies § 46b-215a-2a-(e) (1) (A); or (3) He may seek a deviation for verified support payments for a child not residing with him and not subject to a support order, Regs., Conn. State Agencies § 46b-215a-3-(b) (4) (B).
There are several common conditions that must be met in order to be eligible for consideration under any of these alternatives. There must be the nexus of a legal obligation to the child on whose behalf the deduction or deviation is claimed. Thus the obligor must prove that the child is legally his, or that there is some other legal dependency relationship, such as court-ordered guardianship or custody. Secondly, the obligor parent must actually be providing support for the child.
It is up to this court, as the trier of fact, to determine the credibility of witnesses and the weight to be given to their testimony.Powers v. Olson, 252 Conn. 98, 105, 742 A.2d 799 (2000); Leo v. Leo,197 Conn. 1, 4, 495 A.2d 704 (1985); Griffin v. Nationwide Moving Storage Co., 187 Conn. 405, 422, 446 A.2d 799 (1982); Riccio v. Abate,176 Conn. 415, 418, 407 A.2d 1005 (1979); Raia v. Topehius, 165 Conn. 231,235, 332 A.2d 93 (1973); Shearn v. Shearn, 50 Conn. App. 225, 231,717 A.2d 793 (1998); Cook v. Bieluch, 32 Conn. App. 537, 549,629 A.2d 1175, cert. denied 228 Conn. 911, 635 A.2d 1229 (1993); Meir v.Meir, 15 S.M.D. ___ (2001); Cruz v. Kourpouanidis, 12 S.M.D. 38, 39 (1998); Hepburn v. Hepburn, 8 S.M.D. 126, 133 (1994); Fretina v.Fretina, 5 S.M.D. 139, 142 (1991).
"A trier of fact is free to reject testimony even if it is uncontradicted; and is equally free to reject part of the testimony of a witness even if other parts have been found credible." (citations omitted) Barrila v. Blake, 190 Conn. 631, 639, 461 A.2d 1375 (1983); see also Mather v. Griffin Hospital, 207 Conn. 125, 145, 540 A.2d 666
CT Page 5049 (1988); Bieluch v. Bieluch, 199 Conn. 550, 555, 509 A.2d 9 (1986); C. Tait J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 3.1, pp. 36-37. The court has the right to accept part and disregard part of the testimony of any witness. Smith v. Smith, 183 Conn. 121, 123, 438 A.2d 842
(1981); Rood v. Russo, 161 Conn. 1, 3, 283 A.2d 220 (1971); Clark v.Haggard, 141 Conn. 668, 674, 109 A.2d 358 (1954); Baretta v. TTStructural, Inc., 42 Conn. App. 522, 527, 681 A.2d 359 (1996); Dawkinsv. Nash, 15 S.M.D. ___, 7 Conn.Ops. 1302 (2001); Lynk v. Lynk, 11 S.M.D. 233, 241 (1997); Carli v. Ruszala, 10 S.M.D. 320, 321 (1996);Tsirigotis v. Tsirigotis, 9 S.M.D. 152, 155 (1955); Kimery v. Kimery, 9 S.M.D. 54, 56 (1995); Berluti v. Berluti, 5 S.M.D. 377, 382 (1991).
After careful evaluation of the testimony and evidence educed at the hearing, the court finds that the defendant has not established sufficient defenses to the entry of a support order based on his earning capacity. While the court finds it plausible that he has suffered a work-related injury, the court will not speculate as to the existence or extent of any disability. It was up to the defendant to document this claim, and he failed to do so. Moreover it was up to the defendant to provide a clearer picture of the status of his workers' compensation claim.
As to his claims regarding other dependant children, the defendant again has provided little basis for consideration. Most of the information available was provided not by the defendant, but by the State from its support enforcement records, and by the Court, which ordered the files on his other support cases and took judicial notice thereof. A review of these records discloses the following: There are six other cases in this judicial district implicating other children of the defendant. Two of these cases were dismissed without support orders. One file is for a child who has reached majority, but includes a substantial arrearage. The other three files cover children born between 1986 and 1993 to different mothers. There are active support orders in each of the three files. The defendant is delinquent on all of these orders.[3]
The temporary order corresponds to the guidelines table at a net income of $300 per week for two children. Considering the factors set forth in the guidelines and child support statutes, the court finds that this remains an appropriate support order. In addition to the earning capacity deviation, the court invokes Regs., Conn. State Agencies §46b-215a-3-(b) (5) (coordination of total family support); §46b-215a-3 (b) (6) (B) (the best interests of the children) and §46b-215a-3-(b) (6) (C) (other equitable factors). The amount relates to the defendant's workers' compensation benefits prior to their unexplained interruption. The order is also close to the figure that the defendant himself stated that he could afford ($50 per week per child, see CT Page 5050 Transcript, 94-95). It is true that years ago he had a higher gross income at Aetna ($369.24 per week)[4] and the seasonal snowplowing work ($12 per hour) as well as some work at lower hourly rates. In order to micro-calculate guidelines for these periods the court would be required to take additional evidence and analyze appropriate deductions for taxes and the like. Additionally, to calculate the arrearage, the court would be required to factor in that there were some sporadic support payments for the other children, which likely were more significant during periods of regular employment such as Aetna, since all of those orders were subject to income withholding.
Considering all of the foregoing factors, the court finds the temporary order of $107.00 per week unallocated for the two children to remain the appropriate order as well as the $8.00 per week arrearage order. Furthermore, the court finds that amount to be the appropriate measure of past due support. Liability for past due support extends to three years next prior to the filing of the acknowledgment of paternity with the court. Colon v. Rodrigues, 2 S.M.D. 138, 140 (1988); Pare v. Cancel, 2 S.M.D. 111, 124 (1988); Hall v. Jones, 1 S.M.D. 1 (1987).
The parties both testified that they resided together as an intact family for a substantial period of time after Erica's birth. The defendant estimated this period as five to six years, which would run into 1992 or 1993. Transcript, 38-39. The plaintiff stated that they separated early in her pregnancy with Eric. Transcript, 54. This would place their separation as late summer of 1990.
On reflection, the defendant conceded that it was probable that they had already broken up when they appeared in court in answer to the 1991 support petition. This proceeding first came to court just a few days before Eric was born. Based on the foregoing, the court finds that the reach back period for past due support extends to January 30, 1991.
Calculating the portions of the arrearage owed to the State versus the amounts owed to the plaintiff is somewhat more difficult. The investigator at the hearing had prepared to testify based on the paternity petition, thus anticipated that the reach back would be limited to just three years. Although the case was passed into late afternoon to give him an opportunity to obtain further records, he was only partially successful, and some of the resulting testimony was inconsistent.
The investigator testified that the children were on public assistance from September 8, 1992 through January 31, 1998. The total amount of assistance paid during that time was $29,466.00. He was unable to obtain from his office the full history of public assistance payments, which totaled some 78 pages. Instead, his office faxed to him the first and CT Page 5051 last page of the records. From this information, he testified that the first payment was in the amount of $530.00 and the last payment $639.00. He deduced that after the first month, the full monthly grant of $639.00 would have been paid each month.[5]
The plaintiff agreed that she put her children on public assistance in 1992. She stated that in 1995 she took a job as a security officer and began forwarding copies of her pay stubs to the Department of Social Services. She stated that as a result "they would take it from there and they would send me 200, 300. It depends how much money I made that month." She also stated that when her job became full time, the public assistance payments stopped entirely. She estimates that occurred in 1997 but was unable to estimate when during the year that occurred.
The reduction in assistance payments described by the plaintiff is entirely consistent with state policy. Through a mechanism known as "monthly reporting" support recipients who are able to work are weaned from public assistance. There have been other instances where a State witness reported from an overview record full payment for a period of time only to have revealed when detailed records are produced that payments were reduced or even eliminated due to "monthly reporting" or for other causes. Adams v. Allen, 15 S.M.D. ___ (2001); Busanet v.Plantier, 13 S.M.D. 290, 295 (1999); Thibault v. Thibault, 10 S.M.D. 313 (1996). In the absence of the detailed records in the present case and in view of the discrepancies in the testimony and records provided by the Department of Social Services, the court finds the plaintiff's testimony to be the more credible and reliable evidence. The court finds that payments of public assistance averaged $250 per month from September, 1995 through August, 1997, after which payments ceased entirely.[6]
The maximum amount of arrearage owed to the State of Connecticut under a support assignment is limited to the total amount of public assistance paid by the State. The support arrearage accruing during the time of actual public assistance is awarded to the State. All other arrearage accrues to the support recipient specified in the court order. Busanetv. Plantier, 13 S.M.D. 290, 295 (1999); McBride v. Singleton, 13 S.M.D. 284, 286, 2000 Ct. Sup. 693 (1999); Tharau v. Koutroumanis, 13 S.M.D. 149, 158, n. 14; Fear v. Fear, 12 S.M.D. 64, 78 (1998); Thibault v.Thibault, 10 S.M.D. 313 (1996); Correa v. Rosa, 10 S.M.D. 73, 76-77 (1996); Carniero v. Brevetti, 10 S.M.D. 65 (1996); Alicea v. Villafane,
10 S.M.D. 40 (1996); Radlo v. Radlo, Superior Court, Judicial District of Windham at Putnam, doc. no. 42398 (Martin, J., May 29, 1996) motion for reconsideration denied (June 11, 1996); Ocalewski v. Ocalewski, 8 S.M.D. 166 (1994); McCulloch v. McCulloch, 6 S.M.D. 120 (1992).
"This is consistent with present Federal statutes and regulations. In CT Page 5052 1996, the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), P.L. 104-193 and the Balanced Budget Act of 1997, P.L. 105-33
revised the Social Security Act to provide that ultimately support arrearages pursuant to an assignment of support are to be allocated and distributed in this manner. 42 U.S.C. § 408 (a) (3); 42 U.S.C. § 457 (a) (6). See also 45 C.F.R. § 302.32 (f) (ii);45 C.F.R. § 302.51(a) (1). Section 17-578(b)-2 (b) of the Regulations of Connecticut State Agencies provides[7] that on discontinuance of public assistance "current support payments shall be distributed to the custodial relative of record on the date of discontinuance, for the benefit of the children named in the child support order.'" Coon v.Jewett, 14 S.M.D. ___ (2000); McBride v. Singleton, supra, 13 S.M.D. 286.
At the time that the State was providing public assistance the so-called family unit rule was in effect. The public assistance grant to the family unit was viewed as indivisible. Feliciano v. Feliciano,37 Conn. App. 856, 658 A.2d 141, affirmed 236 Conn. 719, 674 A.2d 719
(1996); Busanet v. Plantier, 13 S.M.D. 290, 293 (1999); see also Bowenv. Gilliard, 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987). During the period of time in which the full grant was paid, the support order did not cover the full amount of the public assistance grant. Accordingly, all arrearages accruing during that period are owed to the State. That amounts to $16,585.00.
During the following two years, the plaintiff was on monthly reporting, while receiving an average of $250 per month from the State. An additional $6,000.00 accrued to the State during this period of time. The remaining past due support during this period, amounting to $5,128.00 is owed to the plaintiff. The remaining periods of unpaid support are due entirely to the plaintiff. This includes the period from the birth of Eric to the commencement of public assistance, a period of 75 weeks during which $8,025.00 of past due support accrued. Another period from the last of the supplemental payments until the hearing date is all owed to the plaintiff. This totals 216 additional weeks representing $23,112.00 of additional past due support. Summing the two sets of figures yield the total arrearages.
Accordingly, the court finds the total arrearage of $58,850.00 as of October 25, 2001 allocated $22,585.00 to the State of Connecticut and the balance of $36,265.00 owed to the named plaintiff. The arrearage payment order and income withholding were set at the original hearing. Pursuant to the Child Support Guidelines, payments are allocated first to the plaintiff's arrearage to roll over to the State when she is paid in full. Regs., Conn. State Agencies, § 46b-215a-4a (b) (2). The court orders each parent to provide medical and dental insurance as available at CT Page 5053 reasonable cost through employment, union or group plan. The provisions of General Statutes § 46b-84 (e) are incorporated. The court finds no additional ability of the defendant to contribute to unreimbursed medical costs and declines to enter an order in this regard, or with regard to day care.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate