[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED APRIL 30, 1997
This action by writ, summons and complaint claiming dissolution of the parties' marriage and other relief was made returnable to this court on August 30, 1994. Both the plaintiff wife and the defendant husband appeared and on August 16, 1994 the defendant filed a cross complaint also seeking dissolution and other relief.
On August 5, 1994, the plaintiff sought orders of the court with respect to custody and support pendente lite. On September 12, 1994, orders of the court were entered, by agreement, which included orders that the defendant pay to the plaintiff as child support $122 per week. This amount was in accordance with the Child Support and Arrearage Guidelines (hereinafter "child support guidelines"). On November 28, 1994 the defendant filed a motion to modify the custody and visitation order and on December 13, 1994 the visitation was modified. On February 6, 1997, the defendant again sought to modify the pendente lite orders with respect to the support order based upon a substantial change in circumstances. Those changed circumstances resulted from the reduction of the defendant's income due to the defendant's incarceration. On March 7, 1997 this matter was tried to the court having previously been claimed to the limited contested list.
The court finds the following facts. The plaintiff and defendant were married on September 3, 1988 at Vernon, Connecticut. Both plaintiff and defendant have resided continuously in Connecticut for at least one year prior to filing of the complaint. The parties have one child, Shana, who was born on January 14, 1988. No other minor children have been born to the wife since the date of the marriage and no state agency or town has contributed to the support or maintenance of either party or the child. CT Page 3610
The plaintiff, who was born on November 6, 1959, presently resides in Tolland, Connecticut. She has a high school education, is employed as a nail technician earning a net weekly wage of $386 and is in good health. The defendant is presently incarcerated at the Walker CCI in Suffield, Connecticut after having been sentenced to a term of eighteen years suspended after twelve years. The defendant testified that he was convicted of Assault in the First Degree, Burglary in the Second Degree, and Sexual Assault in a spousal relationship committed in June of 1994. He is in reasonably good health but has not completed his high school education. His lack of a high school diploma or equivalent prevents him from securing any prison job while incarcerated. The defendant intends to obtain his high school equivalency certificate while incarcerated, but that will take approximately two years. Any compensation for prison work that he could obtain, if he had the necessary education, is negligible. Prior to incarceration and immediately prior to the defendant's filing of his Motion to Modify dated February 6, 1997 the defendant was employed as a mechanic and earned a net weekly wage of $468 per week.
During the marriage and prior to their separation the parties resided at 8A Satkowski Drive in Stafford Springs, Connecticut. This home was acquired by the defendant prior to the marriage and title to the real estate is in the defendant's name alone. The consideration for the home was supplied by the defendant and from proceeds of a mortgage from the Housing Corporation of Connecticut. The present outstanding balance on the mortgage is approximately $96,000. The down payment on the home in the amount of $20,000, was supplied entirely by the defendant from the proceeds of an insurance claim prior to the marriage. The plaintiff supplied none of the consideration. Presently, despite the payments made on the mortgage, there is little or no equity in the home.
The residence is a two-family home and presently both units are occupied by tenants who pay rent to the defendant. After payment of the mortgage, insurance, and taxes the defendant nets approximately $60 per month income from the two-family residence.
During the course of the marriage the defendant was frequently absent. He spent his days working and many of his evenings and weekends with either his friends or traveling to and from recreational auto racing events. The disruption to the marriage resulting from his absence was compounded by the fact CT Page 3611 that their daughter, Shana, suffered from colic and ear infections as a small child. The burden of these problems was left entirely on the plaintiff. The child was also hyperactive and this further placed demands on the plaintiff who, as previously noted, received little assistance from the defendant. The plaintiff testified, and the court so finds, that the breakdown of the marriage was occasioned by the defendant's absences and the pressures that those absences created. In May of 1994, the plaintiff left the defendant and moved out of the residence, to live with a female friend.
The only asset of the marriage of any note is the two-family residence in Stafford Springs. The plaintiff seeks a conveyance of this property to her so that she can reside there with her daughter and continue to rent the remaining unit. The defendant desires to sell the property, if he can find a buyer who will pay a price sufficient to pay off the mortgage. Any excess funds generated the defendant proposes to divide equally with the plaintiff. Alternatively if the property can not be sold for an amount greater than the mortgage he would continue to hold the property until such time as the property could be sold for more than the mortgage. Again, he would be willing to divide the excess proceeds of sale with the plaintiff. The defendant claims that since he is the sole owner of the property any transfer ordered by the court would result in an acceleration of the mortgage note and a default under the terms of mortgage deed. The court notes that the mortgage (Defendant's Exhibit 2) contains an adjustable rate rider that gives the lender the option of requiring immediate payment in full upon transfer of the property.
However, the mortgage states:
 Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee: and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
 To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to CT Page 3612 Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligate the transferee to keep all the promises and agreements made in the Note and this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
Therefore acceleration of the mortgage note is not a forgone conclusion. The plaintiff would, of course, also have the option of refinancing.
The second issue involves the plaintiff's demand for an award of child support. Pursuant to the court order of October 12, 1994, the defendant is presently ordered to pay $122 per week child support. That order was issued based upon an agreement of the parties, was within the child support guidelines, and was based upon the defendant's net weekly wage of $468.79 as set forth in the defendant's August 30, 1994 financial affidavit. It is uncontroverted that the defendant's net weekly wage has been eliminated because of his recent incarceration. Nevertheless the plaintiff seeks weekly child support based upon the defendant's earning capacity that will accumulate while he is incarcerated and has no net assets.
The defendant seeks an order granting his February 6, 1997 Motion to Modify based upon changed circumstances, thereby eliminating any obligation of child support based upon the standards set forth in the child support guidelines. Further the defendant seeks an order, in this dissolution action, to the same effect.
Thus the issue in this case is whether the court should modify an already existing order of child support when the defendant, who is assetless and unable to earn an income, based upon his reduced financial condition due to his own criminal conduct. A review of the Connecticut law as well as the law of other jurisdictions is warranted.
No appellate court decisions could be found in Connecticut on the issue of whether a person should be required to pay child support while incarcerated, and therefore unable to earn a present wage and is assetless. In Commissioner of Human Resourcesv. Bridgeforth, 42 Conn. Sup. 126, 604 A.2d 836, 6 CONN. L. RPTR. CT Page 3613 17 (Super.Ct. 1992), an appeal from a family magistrate decision refusing to modify a child support order, the Superior Court reversed the magistrate's finding. The court found that state courts differed on the issue, however the court agreed with the reasoning set out in Foster v. Foster, 471 N.Y.S.2d 867
(N.Y.App.Div. 1984).[1]
In an unreported Superior Court decision, the court denied the plaintiff's post trial Motion for Modification dated May 14, 1992 where the plaintiff's income had been reduced because the plaintiff was facing incarceration, O'Connell v. O'Connell,
Superior Court, judicial district of New Haven at New Haven, Docket No. 192265 (September 29, 1992) (7 CONN. L. RPTR. 447,7 CSCR 1175). In this matter, the court applied the same principles to child support that our Supreme Court applied to the issue of modification of an alimony order in Sanchione v. Sanchione,173 Conn. 397. 407, 378 A.2d 522 (1977). In Sanchione v. Sanchione,supra, 173 Conn. 407; the Supreme Court stated:
 For purposes of a new hearing on alimony modification, we emphasize again that modification is not warranted unless there has been a substantial change in the circumstances of either party, occurring subsequent to the entry of the original decree . . . The court in the present case merely stated that the financial affidavits were true and that there had been a "change of circumstances re the defendant's ability to pay . . . "Inability to pay" does not automatically entitle a party to a decrease of an alimony order. It must be excusable and not brought about by the defendant's own fault. (Emphasis added.)
The court found this logic applicable to child support and refused modification under the theory that incarceration was not excusable and was brought about by the defendant's own fault. The court further recognized that a Motion for Modification invokes the equitable powers of the court and that one who seeks equity must do equity. (See also O'Connell v. O'Connell, supra, Docket No. 192265 (7 CONN. L. RPTR. 447, 7 CSCR 1175).
In Parker v. Parker, Superior Court, Judicial District of New London at Norwich, docket number 70489 (Hutchinson, F.S.M.) (Sept. 27, 1991), the court denied the incarcerated parent's Motion to Modify based upon diminution of income due to a criminal conviction relying on Collier v. Jennings, Superior CT Page 3614 Court, judicial district of Hartford-New Britain at Hartford, Docket No. 601172 (December 30, 1987) (3 C.S.C.R. 204); Ohler v.Ohler, 369 N.W.2d 615 (Neb. 1985); and Koch v. Williams,456 N.W.2d 299 (N.D. 1990). Parker was also appealed to the Superior Court and reversed citing Commissioner of Human Resources v.Bridgeforth, supra, 42 Conn. Sup. 126, 6 CONN. L. RPTR. 17.
In the most recent dissolution of marriage judgment involving this issue, the court ordered support in the amount of $117.50 per week based upon the obligor's earning capacity. The court ordered that the child support shall accrue as an arrearage during the period of incarceration and that payment on the arrearage and current support would commence upon defendant's release, Deal v. Deal, Superior Court, judicial district of Middlesex at Middletown, Docket No. 73317 (January 2, 1996). Thus Superior Court decisions in Connecticut can be found in support of both sides of this issue.
As to other jurisdictions, a comprehensive annotation of decisions can be found in Frank J. Wozniak, J.D., Annotation,Loss of Income Due to Incarceration as Affecting Child SupportObligation, 27 A.L.R. 5th 540-92 (1995). Due to the comprehensive nature of the discussion of the findings of various courts on both sides of the issue it is unnecessary to further review them here. It appears that decisions are about evenly split on this issue with the more recent cases favoring ordering support.
In the present case the defendant argues that the court must determine the pending Motion for Modification dated February 6, 1997, as well as decide the child support issue with respect to the pending dissolution. As of February 6, 1997, the defendant was under a court order to pay $122 per week child support. This was based upon applying the child support guidelines to the defendant's earned net income of $468.79 and the plaintiff's net income of $112.00. Further the defendant argues that requiring him to pay or accrue any amount would be additional punishment for his crime, would serve no legitimate purpose, and would not benefit the child.
The court is presented with the option of entering no present child support order and revisiting the issue if and when the defendant's earnings or assets increase, or alternatively, entering a weekly support order now which will accrue and will be paid if and when the defendant begins to earn an income or accumulates assets. For a number of reasons the court believes CT Page 3615 the latter option is preferable from both an equitable and legal point of view.
The defendant first argues that entering any child support order, while he is incarcerated and unable to pay toward what would be an increasing arrearage, would be tantamount to additional penalties being imposed for the crime for which he is incarcerated. The court is not persuaded by this argument. The purpose of child support is exactly that — support of the child. It is not punishment. Further the defendant states that he is being prevented from supporting his child because of the action of the state in incarcerating him. The defendant finds some support in this argument from the Ohio Appellate Court when it stated in Peters v. Peters, 590 N.E.2d 777, 778 (Ohio App. 12 Dist. 1990):
 [To deny relief] would possibly expose appellant to a criminal contempt prosecution for his failure to pay child support which accrued during his imprisonment. We believe it would be unconscionable to criminally punish an individual for neglecting to do what state action has prevented him from doing.
In Connecticut inability to pay has always been a defense to a contempt action and while the defendant remains incarcerated, assetless, and with no income then there is, under Connecticut law, no threat of criminal contempt. Nor is there any threat of contempt when he is released from incarceration so long as he makes payment on the arrearage in accordance with the child support guidelines.
The defendant further argues that once he is released he will be faced with a substantial arrearage, no assets, and therefore no incentive to become a productive member of society. Whether or not the defendant becomes a productive member of society is wholly within the defendant's discretion. The child support guidelines will not stand in his way and are reasonably structured so as to allow the obligated parent to make reasonable payments on any arrearage. The child support guidelines are specific as to the maximum amount of the arrearage that the defendant will be required to pay out of earnings on his release. They are designed to protect the parent who has accumulated an arrearage so as to not leave him unable to provide for his own needs. The court's equitable powers can be invoked by the defendant at that time, to ensure that he is not left in a CT Page 3616 financial situation that is untenable.
Contrary to the defendant's argument, the court finds that its failure to order any support would work an injustice on the plaintiff not the defendant. The plaintiff will be forced to shoulder the entire burden of the cost of the child's upbringing. Funds that she could otherwise set aside for other purposes such as college education for their child or her own retirement will be diverted to pay for the defendant's share of the cost of rearing their child. In balancing the equities the court believes that an order of support which may not be reimbursed until sometime in the future — even after the child reaches majority — is preferable than no order at all.
It is not inconceivable in circumstances such as these that a custodial parent and child could be forced to accept state aid upon the incarceration of the other parent. This could create a reimbursement obligation to the state for any support the state furnishes. See General Statutes § 17b-93, et seq. While this obligation would extend to both the custodial parent and the incarcerated parent it is far more likely to be satisfied by the assets or earnings of the custodial parent and not the incarcerated parent. Thus the incarcerated parent would again be excused from the obligation of furnishing support at the expense of the custodial parent or the state if the support is not reimbursed.
In Turner v. Turner, 219 Conn. 703, 713, 595 A.2d 297 (1991); the Supreme Court reviewed the public policy behind the enactment of the Child Support Enforcement Amendments of 1984 enacted as P.L. 98-378 and codified at 42 U.S. § 666 et seq.:
 Since 1984, the United States Congress has actively encouraged states to take measures to assure that children receive adequate financial support from their parents, thereby reducing governmental expenditures for support of children. The Child Support Enforcement Amendments of 1984, enacted as Public Law 98-378 and codified at 42 U.S.C. § 666
et seq., amended part D of title IV of the Social Security Act to require that states establish procedures to improve the effectiveness of child support enforcement (IV-D) programs. In those amendments, Congress conditioned the states' receipt of federal funds for AFDC programs and for IV-D CT Page 3617 programs upon compliance with these requirements. Among the requirements was a provision directing states to establish, by law or by judicial or administrative action, guidelines for child support award amounts that would be available to, but not binding upon, judges who had the authority to enter child support orders. 42 U.S.C: § 667(a). Such guidelines were intended to provide reliable benchmarks for use in quasijudicial proceedings, to expedite awards of child support, and to guide courts to more equitable awards in order to address the "feminization of poverty" resulting from consistent underestimates of the cost of rearing children by increasing the average level of awards. See, e.g., R.D. Thompson S.F. Paikin, "Formulas and Guidelines for Support," 36 Juv. Fam.Ct.J. 33 (1985).
This public policy statement seeking to further adequate support for children from their parents and thereby reducing governmental expenditures for support of children is a factor to be considered in situations where a custodial parent seeks an upward deviation from the guidelines due to the incarceration of the non-custodial parent.
The defendant also argues that the support order will serve no legitimate purpose. He argues that since the child is presently nine years old by the time the defendant is released the child will have reached the age of eighteen. This rationale for abating support orders during the defendant's incarceration finds support in the case of Leasure v. Leasure, 549 A.2d 225,227 (Pa.Super. 1988), where the court stated:
 Barring an incarcerated and indigent parent from seeking modification provides no present benefit to the child . . . [I]t simply adds to an accumulating burden which falls on the parent when he is least able to bear it.
Nevertheless as our Supreme Court noted, "every dollar [of reduction in child support] shifts that dollar of support for the children involved from the shoulder of the primary obligor, namely, a parent, onto the shoulders of another person — in this case the custodian of the children." Favrow v. Vargas,222 Conn. 699, 717, 610 A.2d 1267 (1992). In this case the burden would unfairly shift to the plaintiff. Equity dictates that the CT Page 3618 defendant under these circumstances not be excused from the obligation of child support at the expense of others. This court is mindful of the fact that it does not have the ability to "do equity" in the future by issuing retroactive orders of child support. Sanchione v. Sanchione, 173 Conn. 397, 378 A.2d 522. If orders are not entered now the court has no power to look back when conditions change and retroactively order support. The court does, however, have the ability to consider the defendant's financial condition in the future when making orders with respect to any payment on the arrearage.
The court also notes the fact that incarceration does not absolve the defendant of any other financial obligation that he has incurred. Certainly the defendant's mortgage obligation will not be discharged by the mere fact of his incarceration and indigency nor will interest abate during that time. The public policy of this state puts a higher priority on child support obligations than it does on payment to general creditors. To not order child support would contravene this policy and relegate the child to a lesser status than accorded that of a general creditor.
In Defendant's Memorandum Re: Child Support, dated March 14, 1997, counsel addresses this issue of equating child support to other financial obligations stating that it "is not an appropriate analogy. An obligation for child support is based upon the current earnings of the obligor, not a debt preceding the incarceration." While child support is not "debt" it is no less an obligation and, as noted herein, can be based upon earning capacity rather than on current earnings.
Finally the defendant argues that by entering an order of support the court must deviate from the child support guidelines. This deviation he claims is unwarranted since the defendant has no ability to earn a wage while incarcerated. The court finds that the decrease in the defendant's income has been occasioned by the defendant's own fault. See Sanchione v. Sanchione, supra,173 Conn. 397. His conduct in committing multiple assaults and burglary resulting in his arrest and conviction is inexcusable conduct. The defendant knew or should have known that his intentional acts would result in his incarceration and loss of income and therefore does not form the basis for a reduction in the existing pendente lite orders or as a rationale for the court not to override the presumption that the child support guidelines are fair and equitable under these circumstances. The court CT Page 3619 therefore specifically finds that applying the child support guidelines in this matter would be inequitable and not in the best interest of the child. In Ohler v. Ohler, supra,
369 N.W.2d 618; the Supreme Court of Nebraska stated:
 Incarceration is certainly a foreseeable result of criminal activity; we find no sound reason to relieve one of a child support obligation by virtue of the fact that he or she engaged in criminal conduct. There is no reason those who have had to step in and assume the applicant's obligation should not be reimbursed by the applicant should his future position enable him to do so.
 Further, we do not see how the best interest of the children for whom the support was ordered would be served by temporarily terminating the applicant's child support obligation.
Support for this position can also be found in other jurisdictions. See Koch v. Williams, supra, 456 N.W.2d 299;Parker v. Parker, 447 N.W.2d 64 (Wis.Ct.App. 1989); Noddin v.Noddin, 455 A.2d 1051 (N.H. 1983).
It is also unnecessary for the plaintiff to demonstrate that the defendant committed his criminal act with the intent to willfully deprive the plaintiff of child support. In Miller v.Miller, 181 Conn. 610, 611, 436 A.2d 279 the Appellate Court stated:
 Nor do we agree with the defendant's contention that reliance on earning capacity is improper in the absence of a finding that the defendant willfully depleted his earnings with a view toward denying or limiting the alimony to be paid to his wife.
See also Wilkens v. Wilkens, 10 Conn. App. 576, 580,523 A.2d 1371. This is no less true in child support awards.
The defendant also argues that "this court should not enter an order based on Mr. Charette's `earning capacity' in that there is no evidence before this court on Mr. Charette's earning capacity. There was no testimony on this issue whatever. An order based on earning capacity cannot possibly enter without evidence of that earning capacity." (Defendant's Memorandum Re: ChildCT Page 3620Support, dated March 14, 1997.) The plaintiff testified that the defendant had worked as a mechanic at Burnside Motors in East Hartford. The court file further reflects a financial affidavit, signed under oath by the defendant, indicating a gross weekly wage from employment of $600 with a net weekly wage of $468.79. This affidavit was used in support of the September 12, 1994 Agreement of the Parties in which the defendant agreed to pay to the plaintiff for support of their child $122 per week. The defendant also agreed at that time to maintain his medical insurance "as available to him through his place of employment for the benefit of the plaintiff and the minor child . . ." This is the order which the defendant seeks to modify by his February 6, 1997 Motion to Modify. The court is entitled to take judicial notice of all papers forming part of the file in this case including the sworn financial affidavits filed by the defendant, the Agreement of the Parties stating that the support order is within the child support guidelines, and the defendants' Motion to Modify on which the defendant seeks a ruling. Krawiec v.Kraft, 163 Conn. 445, 451, 311 A.2d 82 (1972). The court finds that the defendant has an earning capacity of $468.79 per week.
After having considered all of the criteria set forth in General Statutes §§ 46b-81 and 46b-82, the court enters the following orders:
1. Judgment enters dissolving the marriage on the grounds of irretrievable breakdown, all the allegations of the complaint having been proven.
2. Title to the property located at 8 Satkowski Drive, Stafford Springs, Connecticut shall be quit claimed by the defendant to the plaintiff and the plaintiff shall hold the defendant harmless on the existing mortgage on the property. If the defendant fails to execute and deliver a deed to the property within 30 days of this decision the property shall be transferred in accordance with General Statutes § 46b-81.
3. Custody of the minor child, Shana Charette is awarded to the plaintiff subject to reasonable rights of visitation with the defendant. The plaintiff shall cooperate in facilitating visitation by arranging for transportation of the minor child to see the defendant on a regular basis as the parties shall agree.
4. The plaintiff shall be entitled to the exemption for the minor child for 1996 and thereafter. CT Page 3621
5. The defendant's Motion to Modify Child Support dated February 6, 1997 is denied.
6. The defendant is ordered to pay child support in the amount of $122/week. Said amount shall accrue while defendant is incarcerated and so long as he remains assetless.
7. The personal property presently in the possession of the parties shall be solely their property free of claims by the other. The parties shall execute any documents necessary to effectuate this transfer.
8. Each party shall pay their own costs and attorneys fees.
9. Plaintiff's counsel shall prepare a judgment file within 30 days of the date of this decision. Both counsel shall sign the Judgment file.
ZARELLA, J.