[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant mother has filed a motion to modify seeking an increase in the support order for her fifteen year old son. The plaintiff father opposes the motion, or in the alternative seeks a downward deviation.
Joshua Ryan August was born on January 30, 1984 to the defendant mother. In March, 1989, the plaintiff commenced this action seeking joint custody and visitation pursuant to General Statutes §§ 46b-59 and 46b-61. Procedurally, this matter is convoluted. The plaintiffs application does not include a prayer for relief requesting a finding of paternity. Rather, it is alleged that paternity had been "acknowledged" in a proceeding in geographical area 13. That case was not consolidated with the present case, nor is any documentation of the parentage adjudication included in the present file. Nevertheless, in April, 1989, the court, Kline, J., approved a pendente lite visitation agreement. In March, 1990, the matter was tried before the court, Goldstein, J. Both parties were represented by counsel, and the defendant filed a motion for support. The judgment is memorialized by means of a twelve page transcript in the file. There was no mention a parentage determination. Final visitation orders were entered. In addressing support, Judge Goldstein noted a pre-existing $40.00 per week order rendered by the geographical area court (Transcript, 3/13/90, p. 8). The judge ordered that effective August 1, 1989, the support order would be $60.00 per week, reducing to $45.00 per week on January 5, 1990. The judge specifically ordered that the geographical area court and the "Hartford Bureau of Support" be notified of CT Page 7999 the order.
On July 24, 1990, the court, Kline, J. found an arrearage of $1,345.50, plus $31.80 costs and $250.00 counsel fees. The court acknowledged a $1,400.00 lump sum payment, and ordered a $10.00 payment on the "new" arrearage, which was found to be $226.80.
There was no further significant activity in the file until 1998 when the support enforcement division cited the plaintiff for contempt. Both parties appeared for the contempt hearing on May 6, 1998. The contempt citation alleged a $40.00 per week support order, suggesting that Judge Goldstein's order to provide notice of the higher order in 1989 was not effectuated. The proceedings on May 6, 1998 further complicated the issue. The court, Trombley, F.S.M. found an arrearage to "the petitioner" (i.e. the defendant mother) in the amount of $6,360.00 and ordered the plaintiff to pay $40.00 current support plus $40.00 on the arrearage. No motion to modify was filed. This court surmises that the support enforcement division had not yet picked up on Judge Goldstein's order of $45.00 per week and erroneously reported the old G.A. 13 order of $40.00. Rather than modifying the order without a motion, Family Support Magistrate Trombley simply repeated the erroneous order reported to him. of course this scenario likely renders the arrearage finding erroneous as well. The court, Trombley, F.S.M., also increased the arrearage payment order to $40.00 per week and ordered the plaintiff to pay a $2,000.00 lump sum on or before October 7, 1998.
The plaintiff failed to comply with this order and instead filed a motion to modify seeking a reduction of his support order. At the continued hearing on the contempt matter the court,Sullivan, F.S.M., vacated the lump sum and terminated the contempt. The defendant then moved for a rehearing, alleging that Family Support Magistrate Sullivan mistakenly believed that the child of this relationship was in the plaintiffs custody (as opposed to the plaintiffs two other children) when he vacated the lump sum. This motion apparently was not addressed because by the time it was reached for hearing, Family Support Magistrate Sullivan had left the bench. A new contempt citation was issued, which was heard coincidentally with the plaintiffs motion to modify on February 11, 1999.
On February 11, 1999, after a lengthy evidential hearing, the court found Mr. Fredo in contempt. A $1,200 purge amount was set, incarceration was ordered but suspended upon ten specific CT Page 8000 conditions, which included, inter alia, payment of the purge amount. The plaintiffs motion to modify was denied[1]. The court also appointed Attorney Rhonda Morra as counsel and guardian ad liter for the minor child, and admitted into evidence an account audit by the support enforcement division. The audit, which used Judge Goldstein's $45.00 order until May 12, 1998, after which Family Support Magistrate Trombley's $40.00 order was used, concluded that the arrearage owed to the defendant as of January 25, 1999 was $18,096.80[2].
The present motion resulted in another evidential hearing held on April 22, 1999 before the undersigned. The plaintiff claims his only income is Temporary Family Assistance for two children of another relationship. The defendant and the guardian ad litem for Joshua claim that the plaintiff has a substantial earning capacity which should be utilized to provide reasonable support for Joshua.
The burden of proof is on the party seeking the modification.Connolly v. Connolly, 191 Conn. 468, 473, 464 A.2d 837 (1983);Kaplan v. Kaplan, 185 Conn. 42, 46, 440 A.2d 252 (1981); Richardv. Richard, 23 Conn. App. 58, 63, 579 A.2d 110 (1990); Mansfieldv. Haynes, 12 S.M.D. ___ (1998); Moffit v. Moffit, 12 S.M.D. ___ (1998); Danford v. Symonds, 12 S.M.D. ___ (1998); Murray v.Stone, 11 S.M.D. 149, 150 (1997); O'Dell v. O'Dell, 9 S.M.D. 7 (1995); Meyer v. Meyer, 7 S.M.D. 49, 52 (1993); Taylor v. Taylor,
7 S.M.D. 43, 44 (1993); Yochum v. Yochum, 6 S.M.D. 75, 80 (1992);Noble v. Noble, 6 S.M.D. 31, 32 (1992 Berluti v. Berluti, 5 S.MD. 377, 381 (1991); Dubitzky v. Dubitzky, 5 S.M.D. 261, 271 (1991);Monahan v. Monahan, 4 S.M.D. 223, 227 (1990).
The moving party must demonstrate "that continued operation of the original order would be unfair or improper." McGuinness v.McGuinness, 185 Conn. 7, 10, 440 A.2d 804 (1981); Noce v. Noce,181 Conn. 145, 149, 434 A.2d 345 (1980); Harlan v. Harlan,5 Conn. App. 355, 357, 496 A.2d 129 (1985); Mansfield v. Haynes, 12 S.M.D. __ (1998); Moffit v. Moffit, 12 S.M.D. __ (1998); Danfordv. Symonds, 12 S.M.D. __ (1998); Murray v. Stone, 11 S.M.D. 149, 151 (1997); Kimery v. Kimery, 9 S.M.D. 54, 57 (1995); Taylor v.Taylor, 7 S.M.D. 43, 45 (1993); Yochum v. Yochum, 6 S.M.D. 75, 80 (1992); Noble v. Noble, 6 S.M.D. 31, 33 (1992); Kraynak v.Godfrey, 5 S.M.D. 250, 251 (1991); Romaniello v. Roinamello, 5 S.M.D. 87, 91 (1991). "The party seeking modification must clearly and definitely show individual facts and circumstances which have substantially changed." McGuinness v. McGuinness,
CT Page 8001185 Conn. 7, 10, 440 A.2d 804 (1981).
"In determining whether there is a substantial change in circumstances, the court considers all evidence back to the most recent court order." Borkowski v. Borkowski, 228 Conn. 729, 741,638 A.2d 1060 (1994); Danford v. Symonds, 12 S.M.D. ___ (1998);Swain v. Swain, 10 S.M.D. 140, 142 (1996); Thomas v. Thomas, 8 S.M.D. 196, 198 (1994). For purposes of comparison in this case, it matters not whether the comparison is made to the circumstances in 1989 (Judge Goldstein's $45.00 per week order) or in May, 1998 (Family Support Magistrate Trombley's $40.00 support order) since the changes in financial circumstances to be analyzed occurred after the later date.
Prior to late July, 1998, the. plaintiff was employed by Kasden Fuel Company. It is uncontroverted that he voluntarily left this employment. At least at the time, Kasden characterized his departure as "temporary leave" and apparently anticipate his return to work. Minor child's Exhibit FF. Subsequently, he obtained part-time work for Handyman Connection earning from $11.25 to $15.38 per hour depending on the nature of the work. This employer also indicated that he "still has a position with us once his day care situation is resolved." Minor child's Exhibit AA. The court finds that the plaintiff has a substantial earning capacity.
It is well established that a court may consider a party's earning capacity rather than actual income in computing a support order. Johnson v. Johnson, 185 Conn. 573, 576, 441 A.2d 578
(1981); Miller v. Miller, 181 Conn. 610, 611-12, 436 A.2d 279
(1980); Siracusa v. Siracusa, 30 Conn. App. 560, 566, 621 A.2d 309
(1993); Carey v. Carey, 29 Conn. App. 436, 440, 615 A.2d 516 (1992Hart v. Hart, 19 Conn. App. 91, 94, 561 A.2d 151 (1989); Mansfieldv. Haynes, 12 S.M.D. ___ (1998); Moffit v. Moffit, 12 S.M.D. __ (1998); Danford v. Symonds, 12 S.M.D. __ (1998); Murray v. Stone,
11 S.M.D. 149, 152 (1997), Brown v. Brown, 11 S.M.D. 140, 147 (1997); Englemann v. Englemann, 10 S.M.D. 90, 147 (1997); Henjav. Brown, 10 S.M.D. 42, 147 (1996); Kimery v. Kimery, 9 S.M.D. 54, 57 (1995); Jodoin v. Jodoin, 9 S.M.D. 7, 8 (1995); Hay v.Hay, 8 S.M.D. 51, 54 (1994); Guidone v. Moschette, 8 S.M.D. 10, 11 (1994); Webster v. Webster, 8 S.M.D. 4, 5 (1994); Campbell v.Scott, 7 S.M.D. 8, 12, 8 CSCR 507, 11 Conn.Fam.L.J. 71 (1993);Bardsley v. Bardsley, 6 S.M.D. 112, 116 (1992); Ouellette v.Ouellette, 6 S.M.D. 83, 85 (1992). The child support guidelines provide for deviation where the court finds "[o]ther financial CT Page 8002 resources available to a parent." A parent's earning capacity is specifically included in this subsection. Regs., Conn. State Agencies § 46b-215a-3-(b)(1)(B).
The defendant claims he is unable to carry on full time employment commensurate with his earning capacity because of his parenting responsibilities for two children of a subsequent relationship. Mr. Fredo is the father of two children[3] by Dorothy Crawford: two year old Veronica Fredo, and Miranda Sue Crawford, who is now five. On September 20, 1998, the juvenile session of the Superior Court at Willimantic, Mack, J., committed custody of both minor children to Mr. Fredo. (Plaintiffs Exhibits K and L).
Veronica suffers from asthma. The severity of her condition, its treatment and prognosis were disputed by the parties. The plaintiff claims that Veronica requires constant attention and that he personally is the person best trained to administer her care. Counsel for the minor child argues that Veronica's condition as improved substantially, that the prognosis suggests continued improvement, and that an appropriately qualified day care center or caregiver can provide for her needs so that Mr. Fredo can reenter the job market and provide financially for all of his children. This improvement, it is argued, is a substantial change of circumstances such that the plaintiff no longer has any impediment to the full exercise of his earning capacity.
It is up to this court, as the trier of fact, to determine the credibility of witnesses and the weigh their testimony and that of the documentary evidence. Griffin v. Nationwide Moving Storage Co., 187 Conn. 405, 422, 446 A.2d 799 (1982); Riccio v.Abate, 176 Conn. 415. 418, 407 A.2d 1005 (1979); Raia v.Topehius, 165 Conn. 231, 235, 332 A.2d 93 (1973); Mansfield v.Haynes, 12 S.M.D. ___ (1998); Danford v. Symonds,
12 S.M.D. ___ (1998); Kimery v. Kimery, 9 S.M.D. 54, 57 (1995); O'Dellv. O'Dell, 9 S.M.D. 7, 8 (1995); Hepburn v. Hepburn, 8 S.M.D. 126, 133 (1994); Fretina v. Fretina, 5 S.M.D. 139, 142 (1991). The court has the right to accept part and disregard part of the testimony of any witness. Barrila v. Blake, 190 Conn. 631, 639,461 A.2d 1375 (1983); Rood v. Russo, 161 Conn. 1, 3,283 A.2d 220 (1971); Berluti v. Berluti, 5 S.M.D. 377, 382 (1991).
The court finds that the weight of the evidence more strongly supports the defendant mother's position and that of the minor CT Page 8003 child. The court has carefully examined the medical reports and finds that while it may have been appropriate when Mr. Fredo first obtained custody that he became the primary and full-time caregiver for Veronica, her condition has stabilized to the point where alternate care arrangements can be made[4].
The process of finding alternative care arrangements for Veronica and reintroducing the plaintiff to income-producing vocations actually was jump-started by the earlier contempt proceedings. On February 11, 1999 this court held Mr. Fredo in contempt for his failure to pay the support order for Joshua and. released him on condition of his complying with ten rigorous conditions, several of which were addressed to these very issues[5]. To the plaintiffs credit, by the date of the present hearing, he had complied with. all the conditions. He even has the genesis of a plan to work himself back into full time employment although less urgently than the situation requires.
In determining the appropriate support order under the unique circumstances of this case, the child support guidelines are not instructive. Strictly speaking, the support order would be zero, since plaintiffs income, primarily from public assistance, is either exempt or below the self-support reserve. Clearly, strict application of the guidelines is inequitable and inappropriate.
The court has carefully considered that all of the factors set forth in General Statutes § 46b-84(d) and the deviation factors in Regs., Conn. State Agencies § 46b-215a-3 including specifically (but not limited to) the occupation, earning capacity,[6] vocational skills and employability of each of the parents, the needs of Joshua[7], the needs of Veronica and Miranda[8] including Veronica's improving but still significant medical needs[9] day care expenses[10] and the financial impact of the plaintiffs likely incremental resumption of full employment[11].
The motion to modify is granted. The support order is temporarily modified[12] to $62.00 per week current support plus $8.00 on the arrearage effective April 2, 1999 through June 30, 1999. The order will increase to a temporary order of $73 per week current support plus S 12.00 per week on the arrearage effective July 1, 1999 and continuing through September 30, 1999. The order will increase further to $80.00 per week temporary current support plus $12.00 per week on the arrearage effective October 1, 1999 and continuing through December 31, 1999. The CT Page 8004 order will increase to a permanent current support order of $88.00 per week current support[13] plus $14.00 per week on the arrearage (total $102.00 per week) effective January 1, 2000.
BY THE COURT
Harris T. LiIshitz Family Support Magistrate