[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 11487
This action was commenced by State of Connecticut which served a paternity petition on the defendant on December 18, 2000 pursuant to General Statutes § 46b-162. The defendant was then incarcerated at Radgowski Correctional Institute in Uncasville. He appeared in court pursuant to a writ of habeas corpus. The defendant was found indigent and the court appointed Attorney Robert Romano to represent him. Pursuant to the defendant's motion, DNA tests were ordered.
On April 17, 2001 the case was tried to the court. The plaintiff admitted that she had previously named another person, one Daryl Wilson as the father of the subject child, Davionn Wilson, born October 25, 1995. She subsequently recanted that claim. However in view of the initial claim the court is unable to find that the element of constancy of accusation is present in this case.
"Constancy of accusation . . . [is] not an essential element of her case . . . [the statute] merely makes such accusations competent evidence . . . admissible to corroborate a plaintiff's testimony in open court."Armstrong v. Watrous, 138 Conn. 127, 129, 82 A.2d 800 (1951); Mosher v.Bennett, 108 Conn. 671, 675, 144 A. 297 (1929); Leonard v. Miranda,38 Conn. Sup. 680, 682, 460 A.2d 1318 (1983). The absence of constancy of accusation can be overcome by other competent evidence. Palomba v. Gray,208 Conn. 21, 31, 543 A.2d 1331 (1988).
Here, the laboratory report of the DNA analysis indicated a 5, 804 to 1 paternity index, or a probability of 99.98% that the defendant was the father of the child. This exceeds the presumptive level of 99% set by General Statutes § 46b-168. Based on the DNA results and testimony of the plaintiff the court found that the defendant is the child's father.
The State seeks a support order enter and arrearages based on the defendant's earning capacity. The defendant continues to be incarcerated with an anticipated release date in 2006. He has no income or assets. He is now twenty-four years old. He has a high school diploma. He has never worked. Prior to his incarceration he lived with his family who provided for him. There are no physical or medical impediments to his working. He admits that he paid no support for his child prior to his incarceration.
The child support guidelines presume a zero support order and arrearage. The defendant argues that the court should follow the child support guidelines. The plaintiff and the State urge the court to consider provisions of the child support guidelines allowing for a deviation based on earning capacity and a significant body of case law both in Connecticut and nationwide which hold that a person who commits a CT Page 11488 crime and is incarcerated after conviction should not be relieved of his child support obligation.
This court has recently explored these issues and concluded in a written decision that "the recent trend in this State . . . holds the defendant liable to pay support based on earning capacity notwithstanding incarceration." Shipman v. Roberts, 15 S.M.D. ___ (2001). Other recent Connecticut case law supports this view. Forman v. Forman, 29 Conn.L.Rev. 394, 2001 Ct. Sup. 3663 (Robaina, J., March 13, 2001).
Connecticut law is clear that that a court may consider a party's earning capacity rather than actual income in computing a support order. Utilization of earning capacity is warranted by a self-imposed reduction in income combined with a failure by the obligor to utilize his earning capacity. Johnson v. Johnson, 185 Conn. 573, 576, 441 A.2d 578 (1981);Miller v. Miller, 181 Conn. 610, 611-12, 436 A.2d 279 (1980); Siracusav. Siracusa, 30 Conn. App. 560, 566, 621 A.2d 309 (1993); Carey v.Carey, 29 Conn. App. 436, 440, 615 A.2d 516 (1992); Richard v. Richard,23 Conn. App. 58, 63, 579 A.2d 110 (1990); Hart v. Hart, 19 Conn. App. 91,94, 561 A.2d 151 (1989); Hollings v. Milde, 38 Conn. Sup. 500, 452 A.2d 314
(1982); Bonadio v. Bonadio, Superior Court, judicial district of Danbury, doc. no. FA99-0337168 (Pickard, J., March 14, 2001); Fredo v.August, 13 S.M.D. 83, 87, 1999 Ct. Sup. 7998 (1999); Moffit v. Moffit, 12 S.M.D. 41, 42, 1998 Ct. Sup. 6530 (1998); Danford v. Symonds, 12 S.M.D 32, 36 (1998); Murray v. Stone, 11 S.M.D. 149, 152 (1997), Brown v.Brown, 11 S.M.D. 140, 147 (1997); Englemann v. Englemann, 10 S.M.D. 90, 147 (1997); Henja v. Brown, 10 S.M.D. 42, 147 (1996); Kimery v. Kimery, 9 S.M.D. 54, 57 (1995); Jodoin v. Jodoin, 9 S.M.D. 7, 8 (1995) Hay v. Hay,
8 S.M.D. 51, 54 (1994); Campbell v. Scott, 7 S.M.D. 8, 12,8 C.S.C.R. 507, 11 Conn.Fam.L.J. 71 (1993); Bardsley v. Bardsley,
6 S.M.D. 112, 116 (1992); Ouellette v. Ouellette, 6 S.M.D. 83, 85 (1992). The child support guidelines provide for deviation where the court finds "[o]ther financial resources available to a parent." A parent's earning capacity is specifically included in this subsection. Regs., Conn. State Agencies § 46b-215a-3-(b)(1)(B).
Several older Connecticut cases held that notwithstanding a prior earning capacity, the support obligation of an incarcerated obligor would be suspended during the period of incarceration. Yrayta v. Bridgeforthsub nom. Commissioner of Human Resources v. Bridgeforth, 42 Conn. Sup. 126,129, 604 A.2d 836 (Burns, J., Feb. 11, 1992) (reversing decision of the Family Support Magistrate ordering child support from an incarcerated obligor); Parker v. Parker,[1] Superior Court, Judicial District of New London at Norwich, doc. no. 70489 (Mihalakos, J., Dec. 8, 1991) (same); Laubenheimer v. Laubenheimer, 10 S.M.D. 55,1996 Ct. Sup. 4031
(Lifshitz, F.S.M., May 16, 1996, approved with modification, CT Page 11489Teller, J.); Gueits v. Correa, 8 S.M.D. 77 (1994).
However, a 1997 Superior Court decision rejected the holding inBridgeforth and progeny. In Charette v. Charette, 19 Conn. L. Rptr. 187, 3 Conn.Ops. 579, 1997 Ct. Sup. 3609 (Zarella, J., 1997), the court found that "its failure to order any support would work an injustice on the plaintiff not the defendant. The plaintiff will be forced to shoulder the entire burden of the cost of the child's upbringing. Funds that she could otherwise set aside for other purposes such as college education . . . will be diverted to pay for the defendant's share of the cost of rearing their child. In balancing the equities the court believes that an order of support which may not be reimbursed until sometime in the future — even after the child reaches majority — is preferable than no order at all." Id, 1997 Ct. Sup. 3616.
The court applied the law of self-imposed reduction in earning capacity to the circumstances of an obligor incarcerated after conviction of criminal activity. "The court finds that the decrease in the defendant's income has been occasioned by the defendant's own fault. His conduct in committing multiple assaults and burglary resulting in his arrest and conviction is inexcusable conduct. The defendant knew or should have known that his intentional acts would result in his incarceration and loss of income . . . Id, 1997 Ct. Sup. 3618 (citation omitted).
In Crouse v. Crouse, 21 Conn. L. Rptr. 390, 1998 Ct. Sup. 1642 (Solomon,J., 1998) the court elected to follow Charette rather than Bridgeforth:
"In a relatively recent Superior Court decision, the court conducted a thorough and thoughtful analysis of this issue and concluded that the obligor should not be relieved of his support obligation during the period of his incarceration. The court there considered, and rejected for reasons which this court finds to be sound, the various rationales upon which child support obligors have been granted relief as a result of incarceration. Although not bound by the decision of a coordinate court, this Court is persuaded by the sound reasoning in Charette that individuals such as the defendant not be relieved of their child support obligation when, through their own misconduct, they are incarcerated."Crouse v. Crouse, 1998 Ct. Sup. 1643-44.
Subsequently, in Scapin v. Scapin, 11 S.M.D. 171, 20 Conn. L. Rptr. 348, 3 Conn.Ops. 1039, 1997 Ct. Sup. 9530 (Lifshitz, F.S.M., 1997), the undersigned also followed the Charette decision, abandoning its previous propensity to follow the Bridgeforth rule. "[I]n the absence of an authoritative decision by the Appellate Court or the Supreme Court, this court finds it appropriate to follow its own analysis and conscience. In particular, the court finds the analysis of Judge Zarella in Charette v.Charette and Family Support Magistrate Sullivan in Fleming v. Raiford to CT Page 11490 be both the most recent and the most persuasive Connecticut Law on the issue." Scapin v. Scapin, supra, 11 S.M.D. 175.
Subsequently all of the decisions in Connecticut on the issue have been consistent with Charette and have abandoned Bridgeforth. Shepaum v.Hernandez, 14 S.M.D. 374 (Bentivegna, F.S.M., Nov. 20, 2000); Suarez v.Carmona, 14 S.M.D. 414 (Bentivegna, F.S.M, Nov. 28, 2000); McBride v.Singleton, 13 S.M.D. 267, 2000 Ct. Sup. 693 (Lifshitz, F.S.M., Dec. 25, 1999); Morton v. Morton, Superior Court, judicial district of Tolland at Rockville, Docket No. 67544 (Zarella, J., April 7, 1999); Graham v.Graham, 12 S.M.D. 172 (Nov. 19, 1998, Sosnoff, F.S.M), Carrero v.Gonzalez, 11 S.M.D. 177 (Lifshitz, F.S.M, August 3, 1997). Several decisions prior to the Charette and Crouse cases came to the same conclusion. Deal v. Deal, Superior Court, Judicial District of Middlesex at Middlletown, doc. no. 73317, 1996 Ct. Sup. 327 (Gordon, J., Jan. 2, 1996); O'Connell v. O'Connell, 7 Conn. L. Rptr. 447,7 C.S.C.R. 1175 (Axelrod, J., May 14, 1992); Moore v. Moore, 10 S.M.D. 197 (Trombley, F.S.M, Oct. 3, 1996); Fleming v.Raiford, 10 S.M.D. 80 (Sullivan, F.S.M, June 20, 1996);Collier v. Jennings, 1 S.M.D. 92, 3 C.S.C.R. 204 (Lifshitz,F.S.M., Dec. 30, 1987).
It is also noteworthy that significant segments of the law upon whichBridgeforth is based are no longer valid. In fact, four of the eight out-of-state cases cited in are no longer prevailing law in their respective states. The reviewing court in Bridgeforth relied heavily onFoster v. Foster, 99 App.Div.2d 284, 471 N.Y.S.2d 867 (1984) and Matter ofMarriage of Edmonds, 53 Or. App. 539, 633 P.2d 4, 5 (1981) in deciding that "any obligation for support or for arrearage is suspended nunc pro tunc from the date of incarceration to the date of the defendant's release . . . Yrayta v. Bridgeforth, sub nom. Commissioner of HumanResources v. Bridgeforth, supra, 42 Conn. Sup. 129.
Foster v. Foster no longer appears to be controlling law in New York, although it has not been expressly overruled. In three more recent decisions, Knights v. Knights, 71 N.Y.2d 865, 522 N.E.2d 1045,527 N.Y.S.2d 748 (1988), Frasca v. Frasca,213 App.Div.2d 589,624 N.Y.S.2d 259
(1995), and Romanous v. Romanous,181 App.Div.2d 872,581 N.Y.S.2d 410 (1992) appellate level New York courts have ruled that an obligor's incarceration is a self-created hardship and that his or her child support obligation should not be suspended during incarceration.
Furthermore, the then leading Oregon case Matter of Marriage ofEdmonds, 53 Or. App. 539, 633 P.2d 4, 5 (1981) was overruled by Matter ofMarriage of Willis, 109 Or. App. 584, 820 P.2d 858 (1991) which in turn was reversed on appeal. Matter of Marriage of Willis, 314 Or. 566,840 P.2d 697 (1992)[2]. CT Page 11491
Similarly, Clemans v. Collins, 679 P.2d 1041 (Alaska 1984) has been superseded. Alaska Civil Rule 90.3 provides that all obligor parents must pay a minimum child support order of at least $50.00 per month. This rule was incorporated into the state's child support guidelines. Alaska Admin. Code tit. 15 § 125.010. Thereafter, Smith v. Alaska Departmentof Revenue, 790 P.2d 1352 (Alaska 1990) and Douglas v. Alaska Departmentof Revenue, 880 P.2d 113 (Alaska 1994), cert. denied, 514 U.S. 1112,115 S.Ct. 1968, 131 L.Ed.2d 857 (1995) confirmed that that an incarcerated obligor's child support obligation should be at least the minimum obligation set by the state's child support guidelines. More recently the Alaska Supreme Court reaffirmed this rule in Bendixen v. Bendixen,962 P.2d 170 (Alaska 1998) although it did reverse the lower court's summary denial of the incarcerated obligor's motion to modify his $1,075.90 per month order. The case was remanded to the trial court with direction to conduct a case-specific" consideration of the circumstances. The language of the court suggests that it rejects "equating incarceration to voluntary, unemployment" while yet imposing at least the minimum order. Id., 173.
The leading case cited in Bridgeforth opposing relief for incarcerated obligors was the Nebraska Supreme Court decision Ohler v. Ohler,220 Neb. 272, 369 N.W.2d 615 (1985). Recently, however, the same court reversed a lower court which, relying on Ohler, based its child support order on the incarcerated obligor's earning capacity before he committed the crime. The court decided that the Nebraska Child Support Guidelines provided for a minimum support order of $50.00 per month and to exceed that amount based on earning capacity "there must be some evidence that the parent is capable of realizing such capacity through reasonable effort." State v. Porter, 259 Neb. 366, 610 N.W.2d 23 (2000).
The child support obligation of a person incarcerated after a criminal conviction has divided courts throughout the country. F.Wozniak, Annot., "Loss of Income Due to Incarceration as Affecting Child Support Obligation" 27 A.L.R.5th 540-592 (1995) contains a thorough and useful analysis and listing of the case law as it then existed. An updating article, K.R. Cavanaugh and D. Pollack, "Child Support Obligations of Incarcerated Parents", 7 Cornell J.L. Pub.Pol'y 531 (1998), concludes that there is no cohesive policy on the issue and argues that "when balancing the rights of convicted criminals against children who require support regardless of parental circumstances, the welfare of children must take precedence." Id., 533. The article includes a perceptive analysis of many cases from around the country including cases subsequent to the publication of the Wozniak article. It is emblematic of the volatility of this issue, however, that courts and States continue to switch sides on the issue. Additional States have also weighed in. CT Page 11492
The issue remains volatile in many states. The discussion above notes that courts in Alaska, Nebraska and Oregon have swung to and fro. In New Jersey, the Superior Court and its Appellate Division remain split with such cases as Kuron v. Hamilton, 331 N.J. Super. 561, 752 A.2d 752 (App. Div. 2000) and Bergen County Board of Services v. Steinhauer,294 N.J. Super. 507, 683 A.2d 856 (Chancery Div. 1996) inclined to grant relief, especially where incarceration exceeds one year[3], while other courts holding commission of a crime to be voluntary conduct hence requiring arrearages to continue to accrue, Halliwell v. Halliwell,326 N.J. Super. 442, 741 A.2d 638 (App.Div. 1999); Topham-Rapanotti v.Guilli, 289 N.J. Super. 626, 674 A.2d 650 (Chancery Div. 1996).
Ohio has previously been reported as conflicted on the issue. ContrastPeters v. Peters, 69 Ohio App.3d 275, 277, 590 N.E.2d 777 (1990) withCole v. Cole, 70 Ohio App.3d 188, 590 N.E.2d 862 (1990). More recently, Ohio seems to be shifting toward the position of denying relief from support obligations by reason of incarceration. In Richardson v.Ballard, 113 Ohio App.3d 552, 555, 681 N.E.2d 507 (1996) the court stated: "Children should not be made to suffer financial hardship because of their parent's wrongdoing." Declaring that it had "reconsidered the implications of our decision in Peters" the court "now agree[s] with the reasoning of other Ohio courts which have found incarceration due to criminal conduct to be voluntary." The court quoted favorably an unreported decision: "A parent cannot, by intentional conduct or mere irresponsibility, seek relief from this duty of support. Defendant, who by his own wrongful conduct placed himself in a position that he is no longer available for gainful employment, is not entitled to relief from his obligation to support his child. Incarceration was a foreseeable result of his criminal conduct and is thus deemed a voluntary act in and of itself." Id, 554, citing Williams v. Williams, Franklin App. No. 92AP-438, 1992 WL 246020 (unreported, Sept. 24, 1992). See alsoBrockmeier v. Brockmeier, 91 Ohio App.3d 689, 633 N.E.2d 584 (1993);Mannasmith v. Mannasmith, Marion App. No. 9-90-44, 1991 WL 217317 (unreported, July 26, 1991).
In Iowa, a recent case followed previous holding in In re Vetternack,334 N.W.2d 761 (Iowa 1983) that incarceration for criminal activity is considered voluntary for purposes of determining child support. However, the court overruled the subsequent case In re Phillips, 493 N.W.2d 872
(Iowa App. 1992), ruling that In re Vetternack required "some examination of the incarcerated obligor's ability to pay. In re Walters,575 N.W.2d 739, 743 (Iowa 1998). Walters arose after the imprisoned obligor finished his sentence and was released. The court determined that because his post-release earnings were substantially less than prior to his arrest and there was no evidence that as a convicted felon he could CT Page 11493 reasonably aspire to his previous income level, he had proven a substantial permanent change in circumstances and was entitled to downward modification. Interestingly, after stating that it was overruling Phillips, the court concluded "based on our holding inVetternack that [the obligor] should be held responsible for his support obligation during the period of his incarceration." Although this result was apparently because the obligor had some assets when he commenced incarceration, the court stated that it was unclear how much of those assets had been used to pay down his support arrearage or how much had been dissipated. Nonetheless the court directed that the unpaid support accrue based on the original support order until the date of his release. Id.
A thorough recent analysis of the issue was conducted by the Kansas Supreme Court in In re Marriage of Thurmond, 265 Kan. 715, 962 P.2d 1064
(1998). In considering sister state cases, the court organized them into three categories: those where incarceration of the obligor is held to be (1) no justification, (2) complete justification or (3) one factor to consider. After analysis of cases in each category, the court adopted the "no justification rule" for Kansas. The court concluded that as a matter of law "incarceration alone is not a change of circumstances which can justify suspension or modification of the child support obligation."
The neighboring state of Oklahoma came to a similar result. Its Supreme Court held that an incarcerated obligor continues to have a duty to support his children and that in the absence of other evidence of income it was proper for the trial court to impute income based on the minimum wage for a 40 hour work week. It is also noteworthy that this case, like the present case, involved establishment of an initial support order rather than modification of an existing order. "Although most of the cases seem to concern the issue of whether a pre-existing child support order should be modified downward due to the parent's incarceration, rather than with the exact issue before us, to wit: how should a parent's incarceration effect an initial setting of the support obligation, we deem the principles enunciated therein helpful in analyzing the present situation." Jones v. Baggett, 1999 OK 68, 990 P.2d 235, 245 (1999).
Texas has codified that where evidence is insufficient to establish the obligor's resources, there is a presumption "that the party has wages or salary equal to the federal minimum wage for a 40-hour week. . . ." Tex. Fain. Code Ann. § 154.068Fam. (Vernon 1996). Its Court of Appeals affirmed a trial court's support order of $168 per month child support payable by the incarcerated husband in a divorce decree. Reyes v. Reyes,946 S.W.2d 627 (Tex.App.-Waco 1997).
In Reid v. Reid, 57 Ark. App. 289, 944 S.W.2d 559 (1997) the court CT Page 11494 denied a request to suspend a $200 biweekly support order for two children on grounds of unclean hands. "We agree that equity will not come to the aid of one who of his or her own volition engages m criminal behavior and suffers the consequences which affect the ability to pay child support. Moreover, the needs of the children have remained unchanged, and as between appellant and his children, the interest of the children must prevail. We can think of no reason how their best interests are served by depriving them of support. . . ." Id, 294.
The following additional cases[4], most of which have been discussed in Scapin, supra, generally deny relief to the incarcerated obligor or require some continued child support payments: In re Marriage ofHamilton, 857 P.2d 542 (Colo.App. 1993); Division of Child SupportEnforcement v. Barrows, 570 A.2d 1180 (Del. 1990); Held v. Held,617 So.2d 358 (Fla.App. 1993); Ross v. Ross, 581 N.E.2d 982 (Ind.App. 1991); Davis v. Vance, 574 N.E.2d 330 (Ind.App. 1991); Redmon v.Redmon, 823 S.W.2d 463 (Ky.App. 1992); State v. Nelson, 587 So.2d 176
(La.App. 1991); Alexander v. Alexander, 417 So.2d 92 (La.App. 1982);Hebert v. Hebert, 475 A.2d 422 (Me. 1984) ("no abuse of discretion" in a divorce decree in which the trial court established a $200.00 per week support order for four remaining minor children where the obligor was incarcerated after he was convicted of sexually assaulting his 16-year-old daughter); Oberg v. Oberg, 869 S.W.2d 235 (Mo.App.W.Dist. 1993); Mooneyv. Brennan, 257 Mont. 197, 848 P.2d 1020, 1023 (1993); Noddin v. Noddin,123 N.H. 73, 455 A.2d 1051 (1983); Thomasson v. Johnson, 102 N.M. 512,903 P.2d 254 (1995); Koch v. Williams, 456 N.W.2d 299 (N.D. 1990);Procter v. Procter, 773 P.2d 1389 (Utah App. 1989); Parker v. Parker,152 Wis.2d 1, 447 N.W.2d 64 (1989); Glenn v. Glenn, 848 P.2d 819 (Wyo. 1993).
Decisions in several other states join those that would relieve an incarcerated obligor of all or most of his support obligation. Although Arizona has a statutory provision similar to Texas which allows the court to attribute income of at least minimum wage to an obligor, Ariz.Rev.Stat.Ann. § 25-320 (I), its courts have determined that the support order should be based on the obligor's "actual earning capacity while imprisoned . . . including the opportunity for prison income. . . ."State of Arizona ex rel. Department of Economic Security v. McEvoy,191 Ariz. 350, 354, 955 P.2d 988 (App. 1998); State of Arizona ex rel.Department of Economic Security v. Ayala, 185 Ariz. 314, 317, 916 P.2d 504
(App. 1996).
The only California case on the issue is not definitive, but strongly suggests that absent evidence of substantial assets or actual employment or income opportunities which incarcerated, a substantial reduction in the support order is required. State of Oregon v. Vargas,
CT Page 1149570 Cal.App.4th 1128, 83 Cal.Rptr.2d 229 (1999)[5]. Virginia seems headed in the same direction. Donnell v. Donnell, 20 Va. App. 37,455 S.E.2d 256 (1995).
Previously reported cases which appear to allow relief for incarcerated obligors include: Lewis v. Lewis, 637 A.2d 70 (D.C.Ct.App. 1994); Nab v.Nab, 114 Ida. 512, 757 P.2d 1231 (1988); People ex rel. Meyer v. Nein,209 Ill. App.3d 1087, 154 Ill.Dec. 436, 568 N.E.2d 431 (1991); Wills v.Jones, 340 Md. 480, 667 A.2d 331 (1995)[6]; Pierce v. Pierce,162 Mich. App. 367, 412 N.W.2d 291 (1987); Franzen v. Borders,521 N.W.2d 626 (Minn.App. 1994); Kuronen v. Kuronen, 499 N.W.2d 51
(Minn.App. 1993); Johnson v. O'Neill, 461 N.W.2d 507 (Minn.App. 1990);Leasure v. Leasure, 378 Pa. Super. 613, 549 A.2d 225 (1988); Voecks v.Voecks, 491 N.W.2d 107 (Wis.Ct.App. 1992); Matter of Marriage ofBlickenstaff 71 Wash. App. 489, 859 P.2d 646 (1993).
"In some states, a voluntarily reduced income may serve as a basis for determining the support order unless the voluntary reduction was for the specific purpose of reducing liability for child support. This has never been the law in Connecticut." Shipman v. Roberts, 15 S.M.D. ___ (2001). Other recent Connecticut case law supports this view. Forman v.Forman, 29 Conn.L.Rev. 394, 2001 Ct. Sup. 3663 (Robaina, J., March 13, 2001).
This court remains unpersuaded that there is cause to depart from our recent cases holding the incarcerated obligor liable for continuing support and regarding any impediment to his earnings as a self-imposed hardship. The court also remains unconvinced that any distinction occurs between establishment of new orders and modification of existing orders[7].
The defendant had no work history prior to his incarceration. He does read and write and earned a high school diploma. There are no medical issues which impede employment. Given the ambient job market in Connecticut which has maintained a low unemployment rate, the court agrees with the State's claim that but for his incarceration the defendant could maintain full-time employment at least the State minimum wage of $6.40 per hour. Although the guidelines presumptive order is zero, the court will grant an upward deviation based on Regs., Conn. State Agencies § 46b-215a-3-(b)(1)(B) (earning capacity) and §46b-215a-3-(b)(6)(B) (best interests of the child).
Considering all of the factors listed in the appropriate statutes and the child support guidelines, the court finds $40.00 per week to be a fair and equitable order. The court orders that the defendant pay child support of $40.00 per week plus $4.00 per week on the arrearage. Based on CT Page 11496 the same principles and the same deviation factors the court finds an arrearage of $7,600.00 to the State of Connecticut as of August 11, 2001. The order is payable effective August 12, 2001. Immediate income withholding is ordered. The each party is ordered to provide medical and dental insurance as available through employment, union or other group plan for the benefit of the minor child. The provisions of General Statutes § 46b-84 (e) are incorporated.
The court finds no ability of the defendant to pay any additional sums for unreimbursed medical costs or day care and declines to enter orders on these items. Costs are taxed against the defendant. The State may file a bill of costs as provided in the practice rules. Immediately upon release from custody, the defendant is ordered to conduct a diligent employment search of at least five documented attempts per day until employed forty hours per week or more. He is required to notify the support enforcement division of his place of residence and employer on an ongoing basis.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate